**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,    ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No.: |
| ) | |
| ORION RESIDENTIAL ADVISORS LLC,   ) | |
| RAIMUNDO GONZALEZ, ROSEANN   ) | |
| BROWN-ELLINGTON, and GABRIELLE   ) | |
| IVY, as independent administrator of the   ) | |
| Estate of Doris Ivy   ) | |
| ) | |
| Defendants.   ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), through its undersigned counsel, for its Complaint for Declaratory Judgement against Defendant, Orion Residential Advisors LLC ("Orion"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, Scottsdale seeks a determination of its rights and obligations under insurance policies Scottsdale issued to Orion in connection with an underlying lawsuit filed by Raimundo Gonzalez and others, which asserts certain claims against Orion Residential Management-Illinois LLC ("Orion RMI" as defined below).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because the Defendant Orion is domiciled in this District, and a substantial part of the events or omissions giving rise to Defendant Orion's claim for coverage occurred in this District.

## PARTIES

4. Plaintiff Scottsdale Insurance Company ("Scottsdale") is a corporation organized under the laws of Ohio and with a principal place of business in Arizona. At all relevant times, ("Scottsdale") was authorized to conduct business in the State of Illinois.

5. Defendant Orion Residential Advisors LLC ("Orion") is a Limited Liability Company organized under the laws of the State of Delaware with its principal place of business in Deerfield, Illinois.

6. Defendant Raimundo Gonzalez ("Gonzales") is an adult individual who, on information and belief, is a citizen of and is domiciled in the state of Illinois. Plaintiff Scottsdale does not assert any claim against Defendant Gonzalez in the complaint for this declaratory action and he has been named as a defendant in this action solely as a necessary and indispensable party.

7. Defendant Roseann Brown-Ellington ("Brown-Ellington") is an adult individual who, on information and belief, is a citizen of and is domiciled in the state of Illinois. Plaintiff Scottsdale does not assert any claim against Defendant Brown-Ellington in the complaint for this declaratory action and she has been named as a defendant in this action solely as a necessary and indispensable party.

8. Defendant Gabrielle Ivy, as independent administrator of the estate of Doris Ivy ("Ivy"), is an adult individual who, on information and belief, is a citizen of and is domiciled in the state of Illinois. Plaintiff Scottsdale does not assert any claim against Defendant Ivy in the Complaint and she has been named as a defendant in this action solely as a necessary and

indispensable party.

## THE UNDERLYING ACTION

9.     On June 19, 2020, Gonzales, Brown-Ellington, and Ivy filed a Complaint at Law (the "Complaint") in a lawsuit styled *Raimundo Gonzalez, et. al. v. Orion Residential Management- Illinois LLC, et. al.*, Case No. 2020 L 006376, in the Circuit Court of Cook County Illinois, Law Division (the "Underlying Action").  A true and accurate copy of the Underlying Complaint is attached hereto as Exhibit A.

10.     The Complaint alleges that from July 1, 2012 to present (and continuing), the Moody Bible Institute of Chicago ("Moody") owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate identified as 171 W. Oak Street, Chicago Illinois, and a building situated there that contained various apartments that were leased to people for residential purposes (the "Property"). Ex. A at Count ("Ct.") I, ¶ 1.

11.     The Complaint alleges, from July 1, 2012 to present (and continuing), Chicago Title Land Trust Company ("CTT") held the legal title in trust for Moody for the parcel of real estate identified as 171 W. Oak Street, Chicago Illinois, and a building situated there that contained various apartments that were leased to people for residential purposes (again, the "Property"). Ex. A at Ct. I, ¶ 2.

12.     The Complaint alleges, at all relevant times, Moody and CTT had reserved to themselves the possession and control of the Property, and contracted with Orion Residential Management-Illinois LLC ("Orion RMI") to manage and maintain the Property. Orion RMI managed the apartments at the Property on behalf of Moody. Ex. A, Ct. II, ¶¶ 2, 5.

13.     The Complaint alleges, at all relevant times, Orion RMI managed and maintained the Property, including but not limited to the roof, plumbing, chimney, siding, interior and/or

exterior walls and common walls.  Furthermore, Orion RMI had permitted the Property to become, during said time and long beforehand, so worn, aged, rotted, cracked and mold infested that it was inherently dangerous and unsafe.  Ex. A, Ct. II, ¶ 5.

14.     The Complaint alleges, at all relevant times, Orion RMI had the duty to exercise ordinary care to repair and maintain the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls and common walls in reasonable good and serviceable condition so as not to injure persons residing in the building.  Ex. A, Ct. II, ¶ 6

15.     The Complaint alleges, at all relevant times, Gonzales was residing in apartment 2J, on the second floor of the Property, which was managed by Orion RMI.  Ex. A, Ct. II, ¶ 3.

16.     The Complaint alleges, from July 1, 2012 to present (and continuing), Gonzales was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds while living in the Property. Ex. A, Ct. II, ¶ 8.

17.     The Complaint alleges that Orion RMI had actual knowledge of the existence of mold within the Property, or should have known of the existence of mold within the Property, and as a direct and proximate result of acts or omissions of negligence on the part of Orion RMI, Gonzales suffered multiple injuries on or about his body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues.  Ex. A, Ct. II, ¶¶ 10-11.

18.     The Complaint alleges that Orion RMI owed to duty to Gonzalez not to create any hazardous condition or unreasonable risk to Gonzalez or any other tenant in the property, breached that duty by causing or allowing mold to infest the property, and unreasonably interfered with Gonzalez's use and enjoyment of the property.  Ex. A, Ct. IV,  ¶¶ 11-14.

19.     At all relevant times, Brown-Ellington was residing in apartment 2J, on the second floor of the Property, which was managed by Orion RMI.  Ex. A, Ct. VI, ¶ 3.

20.     The Complaint alleges, from July 1, 2012 to present (and continuing), Brown-Ellington was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds while living in the Property. Ex. A, Ct. VI, ¶ 8.

21.     The Complaint alleges that Orion RMI had actual knowledge of the existence of mold within the Property, or should have known of the existence of mold within the Property, and as a direct and proximate result of acts or omissions of negligence on the part of Orion RMI, Brown-Ellington suffered multiple injuries on or about her body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues.  Ex. A, Ct. VI, ¶¶ 10-11.

22.     The Complaint alleges that Orion RMI owed to duty to Brown-Ellington not to create any hazardous condition or unreasonable risk to Brown-Ellington or any other tenant in the property, breached that duty by causing or allowing mold to infest the property, and unreasonably interfered with Brown-Ellington's use and enjoyment of the property.  Ex. A, Ct. VIII, ¶¶ 11-14.

23.     At all relevant times, until her death on June 29, 2018, Ivy was residing in apartment 9S, on the ninth floor of the Property, which was managed by Orion RMI.  Ex. A, Ct. X, ¶¶ 1, 3.

24.     The Complaint alleges, while Ivy was living in the Property, from July 1, 2012 onward, Ivy was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds while living in the Property. Ex. A, Ct. X, ¶ 8.

25.     The Complaint alleges that Orion RMI had actual knowledge of the existence of mold within the Property, or should have known of the existence of mold within the Property, and as a direct and proximate result of acts or omissions of negligence on the part of Orion RMI, Ivy

suffered multiple injuries on or about her body, both internally and externally, all or some of which caused her death.  Ex. A, Ct. X, ¶¶ 10-11.

26.    The Complaint alleges that Orion RMI owed to duty to Ivy not to create any hazardous condition or unreasonable risk to Ivy or any other tenant in the property, breached that duty by causing or allowing mold to infest the property, and unreasonably interfered with Ivy's use and enjoyment of the property.  Ex. A, Ct. XI,  ¶¶ 11-14.

## THE POLICIES

27.    Scottsdale issued Policy Number BCS0024150, effective from March 1, 2011 to March 1, 2012 (the "2011 Scottsdale Policy"), to Named Insured Orion Residential Advisors LLC (again, "Orion").  The 2011 Scottsdale Policy provides, *inter alia*, occurrence-based Commercial General Liability coverage with limits of liability of $1,000,000 for each Occurrence and a $2,000,000 general aggregate. A true and accurate copy of the 2011 Scottsdale Policy is attached as Exhibit B.

28.    Scottsdale issued Policy Number BCS0027068, effective from March 1, 2012 to March 1, 2013 (the "2012 Scottsdale Policy"), to Named Insured Orion Residential Advisors LLC. The 2012 Scottsdale Policy provides, *inter alia*, occurrence-based Commercial General Liability coverage with limits of liability of $1,000,000 for each Occurrence and a $2,000,000 general aggregate. A true and accurate copy of the 2012 Scottsdale Policy is attached as Exhibit C.

29.    Scottsdale issued Policy Number BCS0029735, effective from March 1, 2013 to March 1, 2014 (the "2013 Scottsdale Policy"), to Named Insured Orion Residential Advisors LLC. The 2013 Scottsdale Policy provides, *inter alia*, occurrence-based Commercial General Liability coverage with limits of liability of $1,000,000 for each Occurrence and a $2,000,000 general aggregate. A true and accurate copy of the 2013 Scottsdale Policy is attached as Exhibit D.

30. The 2011 Scottsdale Policy, 2012 Scottsdale Policy and 2013 Scottsdale Policy are collectively described herein as the "Scottsdale Policies".

31. Coverage A under the Commercial General Liability Coverage Form of the Scottsdale Policies provides, in pertinent part, as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But: […]

\* \* \*

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; […]

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

See Ex. B at pp. 23-24, Ex. C at pp. 21-22, Ex. D at pp. 25-26.

    32.    Coverage A under the Commercial General Liability Coverage Form of the Scottsdale Policies includes the following pertinent exclusion:

    2.  Exclusions

    This insurance does not apply to:

              *   *   *

    b.  Contractual Liability

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in

a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

See Ex. B at p. 24, Ex. C at p. 22, , Ex. D at pp. 26.

33. Coverage B under the Commercial General Liability Coverage Form of the Scottsdale Policies provides, in pertinent part, as follows:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

See Ex. B at p. 28, Ex. C at p. 26, Ex. D at p. 30.

34.  The Commercial General Liability Coverage Form of the Scottsdale Policies includes the following relevant language regarding Who is an Insured:

SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

\* \* \*

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

See Ex. B at p. 31, Ex. C at p. 29, Ex. D at p. 33.

35.  The Commercial General Liability Coverage Form of the Scottsdale Policies includes the following relevant Conditions:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

10

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Knowing of an "occurrence," offense, claim or "suit" by the agent, servant or employee of any insured will not in itself constitute knowledge by the Named Insured unless an executive officer of the Named Insured's organization received such notice from its agent, servant or employee.

See Ex. B at pp. 32-33, 63; Ex. C at pp. 30-31, 64; Ex. D at pp. 34-35, 67

36.     The Commercial General Liability Coverage Form of the Scottsdale Policies

includes the following relevant Definitions:

SECTION V – DEFINITIONS

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
                              *   *   *
5.   "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.   "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.
                              *   *   *
9.   "Insured contract" means:

a.   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.   A sidetrack agreement;

c.   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.   An elevator maintenance agreement;

f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization,

12

provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a

13

person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

17. "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

 20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

See Ex. B at pp. 34-37, Ex. C at pp. 32-35, Ex. D at pp. 36-39.

 37. The Scottsdale Policies contain endorsement CG 21 44 (07 98), which states:

LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| |
|---|
| Premises:<br>Per Schedule of Locations |
| Project:<br>N/A |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

See Ex. B at p. 44, Ex. C at p. 42, Ex. D at p. 53.

38.     The Scottsdale Policies also contain endorsement CG 21 67 (12-04), which states

CG 21 67 (12-04)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT
CAREFULLY.

FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following exclusion is added to Paragraph 2. Exclusions of Section I –
        Coverage A – Bodily Injury And Property Damage Liability:

2.     Exclusions

       This insurance does not apply to:

       Fungi Or Bacteria

       a.     "Bodily injury" or "property damage" which would not have
              occurred, in whole or in part, but for the actual, alleged or threatened
              inhalation of, ingestion of, contact with, exposure to, existence of,
              or presence of, any "fungi" or bacteria on or within a building or
              structure, including its contents, regardless of whether any other
              cause, event, material or product contributed concurrently or in any
              sequence to such injury or damage.

       b.     Any loss, cost or expenses arising out of the abating, testing for,
              monitoring, cleaning up, removing, containing, treating,
              detoxifying, neutralizing, remediating or disposing of, or in any way
              responding to, or assessing the effects of, "fungi" or bacteria, by any
              insured or by any other person or entity.

              This exclusion does not apply to any "fungi" or bacteria that are, are
              on, or are contained in, a good or product intended for bodily
              consumption.

B.     The following exclusion is added to Paragraph 2. Exclusions of Section I –
        Coverage B – Personal And Advertising Injury Liability:

2.      Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a.      "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b.      Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C.      The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

39.      The 2012 Scottsdale Policy and the 2013 Scottsdale Policy also contain endorsement CG 22 70 (11-85), which states:

CG 22 70 (11-85)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

REAL ESTATE PROPERTY MANAGED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

See Ex. C at p. 51, Ex. D at p. 62.

40.     The 2011 Scottsdale Policy and 2013 Scottsdale Policy also contain endorsement GLS 152s (12-96), which states:

### AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition 4. Other Insurance of SECTION IV–COMMERCIAL GENERAL LIABILITY CONDITIONS is deleted in its entirety and is replaced by the following:

4.   Other Insurance

   a.   Primary Insurance

   This insurance is primary except when b. below applies.

   b.   Excess Insurance

   This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

      (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      (3) If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I); or

      (4) That is valid and collectible insurance available to you under any other policy.

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to

do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

See Ex. B at p. 68, Ex. D at p. 72.

41.     The Scottsdale Policies also contain endorsement UTS-3G-01, which states:

BROAD NAMED INSURED

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Orion Residential Advisors LLC and all affiliated, subsidiary, Associates or allied companies, including but not limited to corporations, limited liability companies, firms, entities, partnerships, organizations, or joint ventures as now exist, or may hereafter be constituted or acquired, or for which the named insured has the responsibility of placing insurance, and for which similar coverage is not otherwise more specifically provided.

See Ex. B at p. 10, Ex. C at p. 81, Ex. D at p. 86.

42.     The 2013 Scottsdale Policy contains endorsement UTS-74g (08-95), which states:

UTS-74g (08-95)

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

19

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

See Ex. D at 17.

## THE DISPUTE

43.     Orion has sought a defense and indemnity under the Scottsdale Policies for the claims asserted against Orion RMI in the Underlying Action.

44.     Scottsdale has determined through its investigation that it owes no obligation under any of the Scottsdale Policies to defend or to indemnify Orion in connection with the claims asserted against Orion RMI in the Underlying Action.

45.     Scottsdale has advised Orion in writing that it disclaims any obligation under the Scottsdale Policies to provide a defense to Orion or to indemnify Orion in connection with the claims asserted against Orion RMI in the Underlying Action.

46.     Scottsdale now brings this action to obtain a judicial determination that it owes no duties under the Scottsdale Policies to defend or indemnify Orion in connection with the claims asserted against Orion RMI in the Underlying Action.

## COUNT I
**(No Coverage Under 2011 Scottsdale Policy And 2012 Scottsdale Policy
For Claims Arising Out Of Non-Scheduled Locations)**

47.     Scottsdale incorporates paragraphs 1 through 46 as if fully set forth herein.

48.     The Complaint in the Underlying Action identifies the parcel of real estate at "171 W. Oak Street, City of Chicago, Cook County, Illinois" (again, the "Property") as being the location where the alleged injury to the underlying defendants took place. Ex. A at ¶ 1.

49.     The 2011 Scottsdale Policy and 2012 Scottsdale Policy each contain a Limitation of Coverage to Designated Premises or Project Endorsement that identifies the Designated Premises to be "per Schedule of Locations." Ex. B at p. 44; Ex. C at 42.

50.     The Schedule of Locations for the 2011 Scottsdale Policy and the 2012 Scottsdale Policy do not identify the Property as a Designated Premises.  (Ex. B at 11-12; Ex. C at 9-10).

51.     The claims asserted against Orion RMI fail to satisfy the requirements of coverage under the 2011 Scottsdale Policy and the 2012 Scottsdale Policy because the Property is not a covered Designated Premises.

52.     Accordingly, the 2011 Scottsdale Policy and 2012 Scottsdale Policy do not afford coverage for the claims asserted against Orion RMI in the Complaint filed in the Underlying Action.

WHEREFORE, Scottsdale Insurance Company seeks a judgment that it owes no duty to defend Orion Residential Advisors LLC in connection with the claims asserted in the Complaint against Orion RMI in the Underlying Action.

## COUNT II
### (No Coverage Under Insuring Agreement Of Coverage B Of The Commercial General Liability Coverage Form Of The Scottsdale Policies)

53.     Scottsdale incorporates paragraphs 1 through 53 as if fully set forth herein.

54.     The Scottsdale Policies each contain an Insuring Agreement of Coverage B – Personal and Advertising Injury Liability of the Commercial General Liability Coverage Form that provides, in pertinent part, that "[Scottsdale] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance

21

applies." The Insuring Agreements of Coverage B further provides that Scottsdale will have the right and duty to defend the insured against any 'suit' seeking those damages, but will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. See Ex. B at p. 28, Ex. C at p. 26, Ex. D at p. 30.

55.     The Insuring Agreement of Coverage B – Personal and Advertising Injury Liability of the Commercial General Liability Part of the Scottsdale Policies further provide, in pertinent part, that "this insurance applies to 'personal and advertising injury' caused by any offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period." See Ex. B at p. 28, Ex. C at p. 26, Ex. D at p. 30.

56.     The claims asserted against Orion RMI in the Underlying Action fail to satisfy the requirements of the Insuring Agreement of Coverage B of the Commercial General Liability Coverage Form of the Scottsdale Policies because the Complaint does not allege any "personal advertising injury" arising out of an offense committed during the effective period of the Scottsdale Policies and, therefore, does not seek to impose liability against Orion RMI for damages because of "personal and advertising injury" as defined in the Scottsdale Policies.

57.     Accordingly, Coverage B of the Commercial General Liability Coverage Form of the Scottsdale Policies does not afford coverage for the claims asserted against Orion RMI in the Complaint filed in the Underlying Action.

WHEREFORE, Scottsdale Insurance Company seeks a judgment that it owes no duty to defend Orion Residential Advisors LLC in connection with the claims asserted in the Complaint against Orion RMI in the Underlying Action.

**COUNT III**
**(No Coverage Under Insuring Agreement Of Coverage A Or Coverage B Of The**
**Commercial General Liability Coverage Form Of The Scottsdale Policies**
**Because Of The Fungi Or Bacteria Exclusion Endorsement)**

58.     Scottsdale incorporates paragraphs 1 through 57 as if fully set forth herein.

59.      The Scottsdale Policies each contain a Fungi or Bacteria Exclusion endorsement (the "FBE Endorsement").  See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

60.     The FBE Endorsement provides, in pertinent part, that Coverage A of each of the Scottsdale Policies does not apply to "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.  See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

61.     The FBE Endorsement provides, in pertinent part, that Coverage B of each of the Scottsdale Policies does not apply to "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage. See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

62.     The FBE Endorsement provides, in pertinent part, that Coverages A and B of each of the Scottsdale Policies do not apply to any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity. See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

63. The FBE Endorsement adds to the Definitions section of each of the Scottsdale Policies a definition for "fungi" that means "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi." See Ex. B at p. 47, Ex. C at p. 46, Ex. D at p. 57.

64. The claims and damages asserted against Orion RMI in the Underlying Action all arise out of the allegations that each of the plaintiffs in the Underlying Action – Gonzales, Brown-Ellington and Ivy – were all exposed to toxic mold and each plaintiff suffered multiple injuries on or about their respective bodies, both internally and externally, including breathing and other respiratory issues, all or some of which were permanent or resulted in death.

65. Accordingly, the FBE Exclusion, which modifies coverage for Coverages A and B of each of the Scottsdale Policies, fully excludes coverage for the claims asserted against Orion RMI in the Complaint filed in the Underlying Action.

WHEREFORE, Scottsdale Insurance Company seeks a judgment that it owes no duty to defend Orion Residential Advisors LLC in connection with the claims asserted in the Complaint against Orion RMI in the Underlying Action.

## PRAYER FOR RELIEF

Plaintiff Scottsdale Insurance Company respectfully requests the entry of an order and judgment in its favor and against Defendant Orion Residential Advisors LLC, declaring as follows:

(1) This court has jurisdiction over the parties and the subject matter of this litigation;

(2) The Scottsdale Policies do not provide coverage to Defendant Orion Residential Advisors, LLC for the claims asserted against it in the Complaint filed in the Underlying Action;

(3)     Scottsdale Insurance Company does not owe a duty to defend Defendant Orion Residential Advisors, LLC in connection with the claims asserted against Orion RMI in the Complaint filed in the Underlying Action;

(4)     Scottsdale Insurance Company does not owe a duty to indemnify Defendant Orion Residential Advisors, LLC in connection with the claims asserted against Orion RMI in the Complaint filed in the Underlying Action;

(5)     Scottsdale Insurance Company is entitled to recover its reasonable costs and expenses, including attorney fees; and

(6)     For such other and further relief as the Court deems proper.

Respectfully Submitted,

SCOTTSDALE INSURANCE COMPANY

Dated: September 13, 2021          s/ Michael J. McNaughton
                                              By:    Michael J. McNaughton (Illinois Bar No. 6272703)
                                                      KENNEDYS CMK LLP
                                                      100 North Riverside Plaza, Suite 2100
                                                      Chicago, Illinois 60606
                                                      Phone: (312) 800-5000
                                                      Fax: (312) 207-2110
                                                      Michael.McNaughton@kennedyslaw.com

                                                      *Attorney for Scottsdale Insurance Company*

EXHIBIT A

FILED DATE: 9/11/2020 11:23 AM   2020L006376

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

RAIMUNDO GONZALEZ and
ROSEANN BROWN-ELLINGTON,
GABRIELLE IVY, as INDEPENDENT
ADMINISTRATOR OF THE ESTATE
OF DORIS IVY, deceased.

    Plaintiffs,

v.

THE MOODY BIBLE INSTITUTE
OF CHICAGO, an Illinois Not-for-Profit
Corporation, CHICAGO TITLE LAND
TRUST COMPANY u/t/a dated April 1,
1977 and known as Trust No. 38836
and ORION RESIDENTIAL
MANAGEMENT – ILLINOIS LLC, a
Delaware Limited Liability Company,

    Defendant.

(Name all parties)

Case No. 20 L 6376

SUMMONS   ☒ FIRST ALIAS SUMMONS

To each Defendant:   See Attached Service List

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee within thirty (30) days after service of this Summons, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

Summons - Alias Summons                                        (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 15247                          Witness: _____

Atty Name: Bruce A. Slivnick              9/11/2020 11:23 AM DOROTHY BROWN

Atty. for: Plaintiff                      _____

Address: 707 Lake Cook Road, Suite 316         DOROTHY BROWN, Clerk of Court

City: Deerfield                           Date of Service: _____
                                          (To be inserted by officer on copy left with
State: __IL__  Zip: 60015                 Defendant or other person):

Telephone: (847) 714-0503

Primary Email: bruce@thellerlaw.com

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3

**CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS**

FILED DATE: 9/11/2020 11:23 AM   2020L006376

 Richard J Daley Center
50 W Washington
Chicago, IL 60602

◯ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

◯ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

◯ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

◯ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

◯ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

 Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

◯ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 3 of 3

## SERVICE LIST

The Moody Bible Institute of Chicago, an Illinois
  Not-for-Profit Corporation
820 N. LaSalle Blvd.
Chicago, Illinois  60610

Chicago Title Land Trust Compnay
  u/t/a dated April 1, 1977 and known as
  Trust No. 38836
c/o CT Corporation System
208 S. LaSalle Street, Suite 814
Chicago, Illinois  60604

Orion Residential Management – Illinois LLC,
  a Delaware Limited Liability Company
c/o Alan B. Patzik
200 S. Wacker Drive, Suite 2700
Chicago, Illinois  60606

FILED
6/19/2020 1:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L006376

9533121

FILED DATE: 6/19/2020 1:14 PM  2020L006376

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

RAIMUNDO GONZALEZ and )
ROSEANN BROWN-ELLINGTON, )
GABRIELLE IVY, as INDEPENDENT )
ADMINISTRATOR OF THE ESTATE )
OF DORIS IVY, deceased. )
                                )
        Plaintiffs, )
                                )
        v. )        No.  20 L 6376
                                )
THE MOODY BIBLE INSTITUTE )
OF CHICAGO, an Illinois Not-for-Profit )
Corporation, CHICAGO TITLE LAND )
TRUST COMPANY u/t/a dated April 1, )
1977 and known as Trust No. 38836 )
and ORION RESIDENTIAL )
MANAGEMENT – ILLINOIS LLC, a )
Delaware Limited Liability Company, )
                                )
        Defendant. )

## COMPLAINT AT LAW

### COUNT I
(Gonzalez – Moody Bible/CTT - Negligence)

NOW COMES Plaintiff, RAIMUNDO GONZALEZ (hereinafter referred to as "Gonzalez") , by and through his undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for his Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1.  From July 1, 2012 to present (and continuing), Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate

1

FILED DATE: 6/19/2020 1:14 PM  2020L006376

commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From July 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of Gonzalez was residing an apartment on the second floor of said building (2J), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From July 1, 2012 to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior

2

FILED DATE: 6/19/2020 1:14 PM    2020L006376

and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While Gonzalez was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

    a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

    b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

    c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

    d. failed to properly perform remediation to eradicate the mold in the building;

    e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

    f. was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence

3

FILED DATE: 6/19/2020 1:14 PM    2020L006376

of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, Gonzalez suffered multiple injuries on or about his body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues, heart problems and other medical problems; he has suffered and will in the future continue to suffer mental pain and anguish; he has become and will be obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of his injuries; thereby losing sums of money, all to his detriment.

WHEREFORE, Plaintiff, RAIMUNDO GONZALEZ, prays for judgment against the Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT"), in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT II
### (Gonzalez – Orion- Negligence)

NOW COMES Plaintiff, RAIMUNDO GONZALEZ (hereinafter referred to as "Gonzalez") , by and through his undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for his Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

4

FILED DATE: 6/19/2020 1:14 PM   2020L006376

1. From July 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of Gonzalez was residing an apartment on the second floor of said building (2J) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

5

FILED DATE: 6/19/2020 1:14 PM   2020L006376

7.  Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.  While Gonzalez was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.  That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

   a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

   b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

   c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

   d.  failed to properly perform remediation to eradicate the mold in the building;

   e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

   f.  was otherwise careless and/or negligent.

10.  Orion had actual knowledge of the existence of mold within the premises and inside

6

FILED DATE: 6/19/2020 1:14 PM  2020L006376

the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Orion, Gonzalez suffered multiple injuries on or about his body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues, heart problems and other medical problems; he has suffered and will in the future continue to suffer mental pain and anguish; he has become and will be obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of his injuries; thereby losing sums of money, all to his detriment.

WHEREFORE, Plaintiff, RAIMUNDO GONZALEZ, prays for judgment against the Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

### COUNT III
(Gonzalez – Moody Bible/CTT – Hazardous Condition)

NOW COMES Plaintiff, RAIMUNDO GONZALEZ (hereinafter referred to as "Gonzalez") , by and through his undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for his Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

7

FILED DATE: 6/19/2020 1:14 PM    2020L006376

1. From July 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From July 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of Gonzalez was residing an apartment on the second floor of said building (2J), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From July 1, 2012 to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

8

FILED DATE: 6/19/2020 1:14 PM   2020L006376

7.  Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.  While Gonzalez was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.  That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

> a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;
>
> b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;
>
> c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.
>
> d.  failed to properly perform remediation to eradicate the mold in the building;
>
> e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and
>
> f.  was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-

9

FILED DATE: 6/19/2020 1:14 PM   2020L006376

Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Moody and CTT owed a duty to Gonzalez not to create any hazardous condition or unreasonable risk to Gonzalez, or any other tenant in the property.

12. Moody breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13. Defendant's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14. Moody and CTT thereby unreasonably interfering with Gonzalez's use and enjoyment of the property.

WHEREFORE, Plaintiff, RAIMUNDO GONZALEZ, prays for the following relief from Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") as follows:

a. That judgment be entered in favor of Plaintiff against the Defendants;

b. That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the

10

FILED DATE: 6/19/2020 1:14 PM  2020L006376

investigation of the mold problem and the damage it caused, the cost of alternate housing, if any, and medical bills incurred due to the nuisance;

   c.  That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

   d.  Any further relief the court deems just and reasonable.

### COUNT IV
(Gonzalez – Orion- Hazardous Condition)

   NOW COMES Plaintiff, RAIMUNDO GONZALEZ (hereinafter referred to as "Gonzalez") , by and through his undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for his Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

   1.  From July 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

   2.  At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

   3.  At the time of the conditions complained of Gonzalez was residing an apartment on the second floor of said building (2J) managed by Orion, having entered into a lease for the

11

FILED DATE: 6/19/2020 1:14 PM   2020L006376

apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While Gonzalez was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. And/or other toxic molds.

9. That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

    a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper

12

FILED DATE: 6/19/2020 1:14 PM   2020L006376

repair;

b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d. failed to properly perform remediation to eradicate the mold in the building;

e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f. was otherwise careless and/or negligent.

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Orion owed a duty to Gonzalez not to create any hazardous condition or unreasonable risk to Plaintiff, or any other tenant in the property.

12. Orion breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13. Orion's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the

13

FILED DATE: 6/19/2020 1:14 PM 2020L006376

property created a hazardous condition for Plaintiff, and other tenants in the property.

14. Orion thereby unreasonably interfered and continues to interfere with Gonzalez's use and enjoyment of the property.

WHEREFORE, Plaintiff, RAIMUNDO GONZALEZ, prays for the following relief from Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company as follows:

a. That judgment be entered in favor of Plaintiff against the Defendants;

b. That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, the cost of alternate housing, if any, and medical bills incurred due to the nuisance;

c. That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

d. Any further relief the court deems just and reasonable.

## COUNT V
(Brown-Ellington – Moody Bible/CTT - Negligence)

NOW COMES Plaintiff, ROSEANN BROWN-ELLINGTON (hereinafter referred to as "Brown-Ellington") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From March 1, 2012 to present (and continuing), and for a long time prior thereto,

14

FILED DATE: 6/19/2020 1:14 PM  2020L006376

Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From March 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of Brown-Ellington was residing an apartment on the second floor of said building (2J), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From July 1, 2012 to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the

15

FILED DATE: 6/19/2020 1:14 PM   2020L006376

defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While Brown-Ellington was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. And/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

> a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;
>
> b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;
>
> c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.
>
> d. failed to properly perform remediation to eradicate the mold in the building;
>
> e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and
>
> f. was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the

16

FILED DATE: 6/19/2020 1:14 PM  2020L006376

individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, Brown-Ellington suffered multiple injuries on or about her body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues, heart problems and other medical problems; she has suffered and will in the future continue to suffer mental pain and anguish; she has become and will be obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; thereby losing sums of money, all to her detriment.

WHEREFORE, Plaintiff, ROSEANN BROWN-ELLINGTON, prays for judgment against the Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT"), in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

### COUNT VI
(Brown-Ellington – Orion- Negligence)

NOW COMES Plaintiff, ROSEANN BROWN-ELLINGTON (hereinafter referred to as "Brown-Ellington") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter

17

FILED DATE: 6/19/2020 1:14 PM   2020L006376

referred to as "Orion") and states as follows:

1. From March 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of Brown-Ellington was residing an apartment on the second floor of said building (2J) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises.  At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to

18

FILED DATE: 6/19/2020 1:14 PM   2020L006376

injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While Brown-Ellington was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. And/or other toxic molds.

9. That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

      a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

      b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

      c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

      d. failed to properly perform remediation to eradicate the mold in the building;

      e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

      f. was otherwise careless and/or negligent.

19

FILED DATE: 6/19/2020 1:14 PM   2020L006376

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Orion, Brown-Ellington suffered multiple injuries on or about her body, both internally and externally, all or some of which are permanent, including breathing and other respiratory issues, heart problems and other medical problems; he has suffered and will in the future continue to suffer mental pain and anguish; he has become and will be obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; he has been unable to follow her usual occupation for a period of time, thereby losing sums of money, all to her detriment.

WHEREFORE, Plaintiff, ROSEANN BROWN-ELLINGTON, prays for judgment against the Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT VII
(Brown-Ellington – Moody Bible/CTT – Hazardous Condition)

NOW COMES Plaintiff, ROSEANN BROWN-ELLINGTON (hereinafter referred to as "Brown-Ellington") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and

Ex. A - p.0024

FILED DATE: 6/19/2020 1:14 PM 2020L006376

CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From March 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From March 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of Brown-Ellington was residing an apartment on the second floor of said building (2J), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From July 1, 2012 to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior

21

FILED DATE: 6/19/2020 1:14 PM    2020L006376

and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7.  Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.  While Brown-Ellington was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. And/or other toxic molds.

9.  That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

> a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;
>
> b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;
>
> c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.
>
> d.  failed to properly perform remediation to eradicate the mold in the building;
>
> e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

22

f. was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Moody and CTT owed a duty to Brown-Ellington not to create any hazardous condition or unreasonable risk to Brown-Ellington, or any other tenant in the property.

12. Moody breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13. Defendant's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14. Moody and CTT thereby unreasonably interfering with Brown-Ellington's use and enjoyment of the property.

WHEREFORE, Plaintiff, ROSEANN BROWN-ELLINGTON, prays for the following relief from Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") as follows:

a. That judgment be entered in favor of Plaintiff against the Defendants;

23

FILED DATE: 6/19/2020 1:14 PM   2020L006376

FILED DATE: 6/19/2020 1:14 PM   2020L006376

b.  That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, the cost of alternate housing, if any, and medical bills incurred due to the nuisance;

c.  That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

d.  Any further relief the court deems just and reasonable.

## COUNT VIII
### (Brown-Ellington – Orion- Hazardous Condition)

NOW COMES Plaintiff, ROSEANN BROWN-ELLINGTON (hereinafter referred to as "Brown-Ellington") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

1.  From March 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2.  At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

24

FILED DATE: 6/19/2020 1:14 PM    2020L006376

3. At the time of the conditions complained of Brown-Ellington was residing an apartment on the second floor of said building (2J) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While Brown-Ellington was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. And/or other toxic molds.

9. That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

25

FILED DATE: 6/19/2020 1:14 PM 2020L006376

a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d. failed to properly perform remediation to eradicate the mold in the building;

e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f. was otherwise careless and/or negligent.

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Orion owed a duty to Brown-Ellington not to create any hazardous condition or unreasonable risk to Plaintiff, or any other tenant in the property.

12. Orion breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

26

FILED DATE: 6/19/2020 1:14 PM   2020L006376

13.   Orion's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14.   Orion thereby unreasonably interfered and continues to interfere with Brown-Ellington's use and enjoyment of the property.

WHEREFORE, Plaintiff, ROSEANN BROWN-ELLINGTON, prays for the following relief from Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company as follows:

a.   That judgment be entered in favor of Plaintiff against the Defendants;

b.   That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, the cost of alternate housing, if any, and medical bills incurred due to the nuisance;

c.   That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

d.   Any further relief the court deems just and reasonable.

## COUNT IX
(IVY – Moody Bible/CTT - Negligence)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY AS INDEPENDENT ADMINISTRATOR of the Estate of DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit

27

FILED DATE: 6/19/2020 1:14 PM   2020L006376

Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From July 1, 2012 to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From July 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From July 1, 2012 to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the

28

FILED DATE: 6/19/2020 1:14 PM   2020L006376

building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

   a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

   b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

   c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

   d. failed to properly perform remediation to eradicate the mold in the building;

   e. failed to warn residents of the premises of the existence of the mold and the

29

FILED DATE: 6/19/2020 1:14 PM 2020L006376

hazards presented by the mold in the apartments; and

    f.  was otherwise careless and/or negligent.

10.  Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, all or some of which caused her death, including breathing and other respiratory issues, heart problems and other medical problems; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered mental pain and anguish; her family became obligated for funeral and burial expenses.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT"), in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

<u>**COUNT X**</u>
(IVY – Orion- Negligence)

30

FILED DATE: 6/19/2020 1:14 PM    2020L006376

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

1.  From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2.  At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3.  At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4.  That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5.  In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including

31

FILED DATE: 6/19/2020 1:14 PM   2020L006376

but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from July 1, 2012 to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

    a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

    b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

    c. failed to perform necessary repairs to the building, including but not limited to,

32

FILED DATE: 6/19/2020 1:14 PM    2020L006376

the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d. failed to properly perform remediation to eradicate the mold in the building;

e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f. was otherwise careless and/or negligent.

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, all or some of which caused her death, including breathing and other respiratory issues, heart problems and other medical problems; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered mental pain and anguish; her family became obligated for funeral and burial expenses.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

FILED DATE: 6/19/2020 1:14 PM   2020L006376

### COUNT XI
(IVY – Moody Bible/CTT – Hazardous Condition)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From July 1, 2012 to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves

34

FILED DATE: 6/19/2020 1:14 PM   2020L006376

possession and control of the premises. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

      a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

35

FILED DATE: 6/19/2020 1:14 PM   2020L006376

b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d.  failed to properly perform remediation to eradicate the mold in the building;

e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f.  was otherwise careless and/or negligent.

10.  Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  Moody and CTT owed a duty to IVY not to create any hazardous condition or unreasonable risk to IVY, or any other tenant in the property.

12.  Moody breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13.  Defendant's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the

36

FILED DATE: 6/19/2020 1:14 PM   2020L006376

property created a hazardous condition for Plaintiff, and other tenants in the property.

14. Moody and CTT thereby unreasonably interfering with IVY's use and enjoyment of the property.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") as follows:

a. That judgment be entered in favor of Plaintiff against the Defendants;

b. That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, and medical bills incurred due to the nuisance;

c. That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring ther action; and

d. Any further relief the court deems just and reasonable.

## COUNT XII
(IVY – Orion- Hazardous Condition)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

37

FILED DATE: 6/19/2020 1:14 PM   2020L006376

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to

38

FILED DATE: 6/19/2020 1:14 PM   2020L006376

injure the Plaintiff or other persons residing in the building.

7.   Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.   While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.   That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

> a.   failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;
>
> b.   failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;
>
> c.   failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.
>
> d.   failed to properly perform remediation to eradicate the mold in the building;
>
> e.   failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

39

FILED DATE: 6/19/2020 1:14 PM   2020L006376

f. was otherwise careless and/or negligent.

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Orion owed a duty to IVY not to create any hazardous condition or unreasonable risk to Plaintiff, or any other tenant in the property.

12. Orion breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13. Orion's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14. Orion thereby unreasonably interfered and continues to interfere with IVY's use and enjoyment of the property.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company as follows:

a. That judgment be entered in favor of Plaintiff against the Defendants;

b. That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the

40

FILED DATE: 6/19/2020 1:14 PM   2020L006376

investigation of the mold problem and the damage it caused, and medical bills incurred due to the nuisance;

    c. That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring ther action; and

    d. Any further relief the court deems just and reasonable.

## **COUNT XIII**
### (IVY – Moody Bible/CTT – Negligence- Wrongful Death)

    NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY AS INDEPENDENT ADMINISTRATOR of the Estate of DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

    1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

    2. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing) and for a long time prior thereto, CTT held the legal title

41

FILED DATE: 6/19/2020 1:14 PM    2020L006376

in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018,

42

FILED DATE: 6/19/2020 1:14 PM  2020L006376

and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d. failed to properly perform remediation to eradicate the mold in the building;

e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f. was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have

43

FILED DATE: 6/19/2020 1:14 PM   2020L006376

known of the existence of the mold.

  11.  Plaintiff, GABRIELLE IVY, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et.seq.* (Westlaw 2020) on behalf of the decedent's next of kin.

  12. As a direct and proximate result of one or more or all of the said negligent acts and/or omissions of the Defendants, Moody and CTT, IVY sustained injuries and other conditions of ill health, hereinbefore described, from which she died on June 29, 2018.

  13.  IVY left surviving next of kin as set forth on **Exhibit E** hereto and incorporated herein by reference.

  14.  By reason of IVY's wrongful death, said next of kin have suffered pecuniary loss, including loss of money, benefits, goods services and society Decedent customary rendered (and but for her death would have continued to render) them; all to the damage of Plaintiff as Decedent's Personal Representative suing for the benefit of Decedent's next of kin.

  WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT"), in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT XIV
(IVY – Orion- Negligence- Wrongful Death)

  NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her

44

FILED DATE: 6/19/2020 1:14 PM 2020L006376

undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her

Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a

Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

1.  From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and

thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the

beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel

of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois,

and a building situated there, that contained various apartments that were leased to people for

residential purposes (hereinafter referred to as "The Premises".

2.  At all times relevant hereto, on behalf of Moody, Orion managed those apartments

located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago,

Cook County, Illinois, and a building situated there, and that had been rented out and assigned

for section 8 housing within the premises.

3.  At the time of the conditions complained of IVY was residing an apartment on the

ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment,

for a monthly rental fee.

4.  That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5.  In leasing parts of the premises, Moody and CTT had reserved to themselves

possession and control of the premises and contracted with Orion to manage and maintain the

premises.  At all times relevant hereto, Orion managed and maintained the Premises, including

but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and

common walls, etc. and had permitted them to become, during said time and long beforehand, so

worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

45

FILED DATE: 6/19/2020 1:14 PM    2020L006376

6.  Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7.  Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.  While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.  That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

  a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

  b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

  c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

46

FILED DATE: 6/19/2020 1:14 PM    2020L006376

    d. failed to properly perform remediation to eradicate the mold in the building;

    e. failed to warn residents of the premises of the existence of the mold and the

hazards presented by the mold in the apartments; and

    f. was otherwise careless and/or negligent.

    10. Orion had actual knowledge of the existence of mold within the premises and inside

the individual premises and/or in the exercise of reasonable care should have known of the

existence of the mold within the premises and/or the individual apartments in that they were

made aware of the mold and/or the problem existed for such a length of time that they reasonably

should have known of the existence of the mold.

    11. Plaintiff, GABRIELLE IVY, brings this action as personal representative pursuant to

the Illinois Wrongful Death Act, 740 ILCS 180/1 *et.seq.* (Westlaw 2020) on behalf of the

decedent's next of kin.

    12. As a direct and proximate result of one or more or all of the said negligent acts and/or

omissions of the Defendant, Orion, IVY sustained injuries and other conditions of ill health,

hereinbefore described, from which she died on June 29, 2018.

    13. IVY left surviving next of kin as set forth on **Exhibit B** hereto and incorporated herein

by reference.

    14. By reason of IVY's wrongful death, said next of kin have suffered pecuniary loss,

including loss of money, benefits, goods services and society Decedent customary rendered (and

but for her death would have continued to render) them; all to the damage of Plaintiff as

Decedent's Personal Representative suing for the benefit of Decedent's next of kin.

    WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR

OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendant, ORION

47

FILED DATE: 6/19/2020 1:14 PM   2020L006376

RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT XV
(IVY – Moody Bible/CTT – Hazardous Condition – Wrongful Death)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

48

FILED DATE: 6/19/2020 1:14 PM   2020L006376

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

FILED DATE: 6/19/2020 1:14 PM   2020L006376

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

    a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

    b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

    c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

    d. failed to properly perform remediation to eradicate the mold in the building;

    e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

    f. was otherwise careless and/or negligent.

10. Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11. Moody and CTT owed a duty to IVY not to create any hazardous condition or unreasonable risk to IVY, or any other tenant in the property.

FILED DATE: 6/19/2020 1:14 PM   2020L006376

12.  Moody breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13.  Defendant's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14.  Moody and CTT thereby unreasonably interfering with IVY's use and enjoyment of the property.

15.  Plaintiff, GABRIELLE IVY, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et.seq.* (Westlaw 2020) on behalf of the decedent's next of kin.

16. As a direct and proximate result of one or more or all of the said negligent acts and/or omissions of the Defendants, Moody and CTT, IVY sustained injuries and other conditions of ill health, hereinbefore described, from which she died on June 29, 2018.

17.  IVY left surviving next of kin as set forth on **Exhibit B** hereto and incorporated herein by reference.

18.  By reason of IVY's wrongful death, said next of kin have suffered pecuniary loss, including loss of money, benefits, goods services and society Decedent customary rendered (and but for her death would have continued to render) them; all to the damage of Plaintiff as Decedent's Personal Representative suing for the benefit of Decedent's next of kin.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred

51

FILED DATE: 6/19/2020 1:14 PM   2020L006376

to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") as follows:

    a.  That judgment be entered in favor of Plaintiff against the Defendants;

    b.  That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, and funeral and/or burial bills incurred due to the nuisance;

    c.  That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring her action; and

    d.  Any further relief the court deems just and reasonable.

## COUNT XVI
(IVY – Orion- Hazardous Condition- Wrongful Death)

    NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

    1.  From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

FILED DATE: 6/19/2020 1:14 PM   2020L006376

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018,

FILED DATE: 6/19/2020 1:14 PM   2020L006376

and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d. failed to properly perform remediation to eradicate the mold in the building;

e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f. was otherwise careless and/or negligent.

10. Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

54

FILED DATE: 6/19/2020 1:14 PM   2020L006376

11.  Orion owed a duty to IVY not to create any hazardous condition or unreasonable risk to Plaintiff, or any other tenant in the property.

12.  Orion breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13.  Orion's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14.  Orion thereby unreasonably interfered and continues to interfere with IVY's use and enjoyment of the property.

15.  Plaintiff, GABRIELLE IVY, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et.seq.* (Westlaw 2020) on behalf of the decedent's next of kin.

16. As a direct and proximate result of one or more or all of the said negligent acts and/or omissions of the Defendants, Moody and CTT, IVY sustained injuries and other conditions of ill health, hereinbefore described, from which she died on June 29, 2018.

17.  IVY left surviving next of kin as set forth on **Exhibit B** hereto and incorporated herein by reference.

18. By reason of IVY's wrongful death, said next of kin have suffered pecuniary loss, including loss of money, benefits, goods services and society Decedent customary rendered (and but for her death would have continued to render) them; all to the damage of Plaintiff as Decedent's Personal Representative suing for the benefit of Decedent's next of kin.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR

55

FILED DATE: 6/19/2020 1:14 PM   2020L006376

OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendant, ORION

RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company as

follows:

a.  That judgment be entered in favor of Plaintiff against the Defendants;

b.  That the Defendants be ordered to compensate Plaintiff for all costs and expenses

incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the

investigation of the mold problem and the damage it caused, and funeral and/or burial bills

incurred due to the nuisance;

c.  That the Defendant be ordered to pay for all attorney's fees and costs necessary to

bring ther action; and

d.  Any further relief the court deems just and reasonable.

### COUNT XVII
(IVY – Moody Bible/CTT – Negligence- Survival)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR

OF THE ESTATE OF DORIS IVY AS INDEPENDENT ADMINISTRATOR of the Estate of

DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys,

Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against

Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit

Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST

COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as

"CTT") and states as follows:

1.  From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and

thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the

beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel

of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois,

and a building situated there, that contained various apartments that were leased to people for

residential purposes (hereinafter referred to as "The Premises".

    2.  From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and

thereafter, to present (and continuing) and for a long time prior thereto, CTT held the legal title

in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of

Chicago, Cook County, Illinois, and a building situated there, that contained various apartments

that were leased to people for residential purposes.

    3.  At the time of the conditions complained of IVY was residing an apartment on the

ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly

rental fee.

    4.  That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

    5.  In leasing parts of the premises, Moody and CTT had reserved to themselves

possession and control of the premises.  From 1987 until IVY's death on June 29, 2018, and for a

long time prior thereto and thereafter, to present, Moody and CTT possessed and controlled the

Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or

exterior walls, and common walls, etc. and had permitted them to become, during said time and

long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently

dangerous and unsafe.

    6.  Moody and CTT had the duty to exercise ordinary care to repair and maintain the

building, including but not limited to, the roof, plumbing, chimney, siding, basement interior

and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as

57

FILED DATE: 6/19/2020 1:14 PM   2020L006376

FILED DATE: 6/19/2020 1:14 PM  2020L006376

not to injure the Plaintiff or other persons residing in the building.

7. Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8. While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9. That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

> a. failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;
>
> b. failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;
>
> c. failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.
>
> d. failed to properly perform remediation to eradicate the mold in the building;
>
> e. failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

FILED DATE: 6/19/2020 1:14 PM   2020L006376

f.  was otherwise careless and/or negligent.

10.  Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  Plaintiff, GABRIELLE IVY, brings this action as Independent Administrator of IVY's estate to recover damages pursuant to the common law and pursuant to the Illinois Survival Statute, 755 ILOCS 5/27-6 (Westlaw 2020).

12. That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, including breathing and other respiratory issues, heart problems and other medical problems and she ultimately died as a result of some or all of these injuries; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered great physical pain and mental anguish.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT"), in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

59

FILED DATE: 6/19/2020 1:14 PM    2020L006376

## COUNT XVIII
(IVY – Orion- Negligence- Survival)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the

60

FILED DATE: 6/19/2020 1:14 PM   2020L006376

premises.  At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6.  Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7.  Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.  While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.  That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to

61

FILED DATE: 6/19/2020 1:14 PM  2020L006376

determine if they were in proper repair;

c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

d.  failed to properly perform remediation to eradicate the mold in the building;

e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

f.  was otherwise careless and/or negligent.

10.  Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

11.  Plaintiff, GABRIELLE IVY, brings this action as Independent Administrator of IVY's estate to recover damages pursuant to the common law and pursuant to the Illinois Survival Statute, 755 ILOCS 5/27-6 (Westlaw 2020).

12.  That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, including breathing and other respiratory issues, heart problems and other medical problems and she ultimately died as a result of some or all of these injuries; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered great physical pain and mental anguish.

62

FILED DATE: 6/19/2020 1:14 PM    2020L006376

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for judgment against the Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, in an amount reasonable and equitable and in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT XIX
(IVY – Moody Bible/CTT – Hazardous Condition – Survival)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") and states as follows:

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes (hereinafter referred to as "The Premises".

2. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing) and for a long time prior thereto, CTT held the legal title in trust for Moody to a parcel of real estate commonly known as 171 W. Oak Street, City of

63

FILED DATE: 6/19/2020 1:14 PM   2020L006376

Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for residential purposes.

3.   At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S), having entered into a lease for the apartment, for a monthly rental fee.

4.   That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5.   In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present, Moody and CTT possessed and controlled the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6.   Moody and CTT had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7.   Moody and CTT disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

8.   While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to

64

FILED DATE: 6/19/2020 1:14 PM 2020L006376

toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

    9.  That during the term of the lease, Moody and CTT committed one or more of the following acts or omissions of negligence:

        a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

        b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

        c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

        d.  failed to properly perform remediation to eradicate the mold in the building;

        e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

        f.  was otherwise careless and/or negligent.

    10.  Moody and CTT either through themselves or through their agent Orion Residential-Illinois, LLC had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably should have known of the existence of the mold.

65

FILED DATE: 6/19/2020 1:14 PM   2020L006376

11.  Moody and CTT owed a duty to IVY not to create any hazardous condition or unreasonable risk to IVY, or any other tenant in the property.

12.  Moody breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13.  Defendant's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14.  Moody and CTT thereby unreasonably interfering with IVY's use and enjoyment of the property.

15.  Plaintiff, GABRIELLE IVY, brings this action as Independent Administrator of IVY's estate to recover damages pursuant to the common law and pursuant to the Illinois Survival Statute, 755 ILOCS 5/27-6 (Westlaw 2020).

16. That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, including breathing and other respiratory issues, heart problems and other medical problems and she ultimately died as a result of some or all of these injuries; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered great physical pain and mental anguish.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendants, MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-For Profit Corporation (hereinafter referred

66

FILED DATE: 6/19/2020 1:14 PM   2020L006376

to as "Moody") and CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and Known as Trust No. 38836 (hereinafter referred to as "CTT") as follows:

      a.  That judgment be entered in favor of Plaintiff against the Defendants;

      b.  That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, and medical bills incurred due to the nuisance;

      c.  That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

      d.  Any further relief the court deems just and reasonable.

## COUNT XX
(IVY – Orion- Hazardous Condition- Survival)

NOW COMES Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY (hereinafter referred to as "IVY") , by and through her undersigned attorneys, Heller Trakhtman & Associates and Bruce A. Slivnick, and for her Complaint against Defendant, ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company (hereinafter referred to as "Orion") and states as follows:

1. From 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), and for a long time prior thereto, Moody owned the beneficial interest in a land trust that owned the legal title to, possessed, and controlled a parcel of real estate commonly known as  171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, that contained various apartments that were leased to people for

67

FILED DATE: 6/19/2020 1:14 PM    2020L006376

residential purposes (hereinafter referred to as "The Premises".

2. At all times relevant hereto, on behalf of Moody, Orion managed those apartments located in the, a parcel of real estate commonly known as 171 W. Oak Street, City of Chicago, Cook County, Illinois, and a building situated there, and that had been rented out and assigned for section 8 housing within the premises.

3. At the time of the conditions complained of IVY was residing an apartment on the ninth floor of said building (9S) managed by Orion, having entered into a lease for the apartment, for a monthly rental fee.

4. That the Plaintiffs' tenancy was extended year-to-year by agreement of the parties.

5. In leasing parts of the premises, Moody and CTT had reserved to themselves possession and control of the premises and contracted with Orion to manage and maintain the premises. At all times relevant hereto, Orion managed and maintained the Premises, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls, etc. and had permitted them to become, during said time and long beforehand, so worn, aged, rotted, cracked, and mold infested that it was inherently dangerous and unsafe.

6. Orion had the duty to exercise ordinary care to repair and maintain the building, including but not limited to, the roof, plumbing, chimney, siding, basement interior and/or exterior walls and common walls etc. in reasonably good and serviceable condition so as not to injure the Plaintiff or other persons residing in the building.

7. Orion disregarding their duty in that respect, negligently failed to repair the defects in the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. and to maintain it in reasonably good and serviceable condition.

68

FILED DATE: 6/19/2020 1:14 PM  2020L006376

8.  While IVY was living in the premises, from 1987 until IVY's death on June 29, 2018, and for a long time prior thereto and thereafter, to present (and continuing), he was exposed to toxic mold, including but not limited to Aspergillis/Penicillium, Ascospores and Cladosporium sp. and/or other toxic molds.

9.  That during the term of the lease, Orion committed one or more of the following acts or omissions of negligence:

    a.  failed to keep the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc., in proper repair;

    b.  failed to inspect the building, including but not limited to the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc. to determine if they were in proper repair;

    c.  failed to perform necessary repairs to the building, including but not limited to, the roof, plumbing, chimney, siding, interior and/or exterior walls, and common walls etc.

    d.  failed to properly perform remediation to eradicate the mold in the building;

    e.  failed to warn residents of the premises of the existence of the mold and the hazards presented by the mold in the apartments; and

    f.  was otherwise careless and/or negligent.

10.  Orion had actual knowledge of the existence of mold within the premises and inside the individual premises and/or in the exercise of reasonable care should have known of the existence of the mold within the premises and/or the individual apartments in that they were made aware of the mold and/or the problem existed for such a length of time that they reasonably

69

FILED DATE: 6/19/2020 1:14 PM   2020L006376

should have known of the existence of the mold.

11.  Orion owed a duty to IVY not to create any hazardous condition or unreasonable risk to Plaintiff, or any other tenant in the property.

12.  Orion breached the duty by causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property.

13.  Orion's causing or allowing mold to infest the property in a manner that mold, and mold spores released into the air and onto the ground in and around the premises and the property created a hazardous condition for Plaintiff, and other tenants in the property.

14.  Orion thereby unreasonably interfered and continues to interfere with IVY's use and enjoyment of the property.

15.  Plaintiff, GABRIELLE IVY, brings this action as Independent Administrator of IVY's estate to recover damages pursuant to the common law and pursuant to the Illinois Survival Statute, 755 ILOCS 5/27-6 (Westlaw 2020).

16.  That as a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Moody and CTT, IVY suffered multiple injuries on or about her body, both internally and externally, including breathing and other respiratory issues, heart problems and other medical problems and she ultimately died as a result of some or all of these injuries; she became and obligated for large sums of money and reasonable medical expenses as a result of endeavoring to be cured of her injuries; she suffered great physical pain and mental anguish.

WHEREFORE, Plaintiff, GABRIELLE IVY AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DORIS IVY, prays for the following relief from Defendant, ORION

70



FILED DATE: 6/19/2020 1:14 PM   2020L006376

RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company as follows:

 a. That judgment be entered in favor of Plaintiff against the Defendants;

 b. That the Defendants be ordered to compensate Plaintiff for all costs and expenses incurred by Plaintiff arising out of the Defendants' conduct, including all expenses for the investigation of the mold problem and the damage it caused, and medical bills incurred due to the nuisance;

 c. That the Defendant be ordered to pay for all attorney's fees and costs necessary to bring this action; and

 d. Any further relief the court deems just and reasonable.

Respectfully submitted,
RAIMUNDO GONZALEZ,
ROSEANN BROWN-ELLINGTON,
and GABRIELLE IVY as
INDEPENDENT
ADMINISTRATOR of the
ESTATE OF DORIS IVY,

By:_____
    Attorneys for Plaintiff

Todd A. Heller
Steven Trakhtman
Andrea J. Beer
Bruce A. Slivnick – Of Counsel
Attorneys for Plaintiffs
707 Lake Cook Road, Suite 316
Deerfield, IL  60015
Tele. No.  (847) 714-0300
Facsimile No.  (847) 714-0310
Atty No. 24947

71

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| RAIMUNDO GONZALEZ and ROSEANN BROWN-ELLINGTON, GABRIELLE IVY, as SPECIAL ADMINISTRATOR and as SPECIAL REPRESENTATIVE OF THE ESTATE OF DORIS IVY, deceased. | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 20 L 6376 |
| THE MOODY BIBLE INSTITUTE OF CHICAGO, an Illinois Not-for-Profit Corporation, CHICAGO TITLE LAND TRUST COMPANY u/t/a dated April 1, 1977 and known as Trust No. 38836 and ORION RESIDENTIAL MANAGEMENT – ILLINOIS LLC, a Delaware Limited Liability Company, | ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

FILED DATE: 6/19/2020 1:14 PM   2020L006376

## **AFFIDAVIT**

I, BRUCE A. SLIVNICK, as one of the attorneys for the Plaintiffs hereby state that the

total money damages sought do exceed $50,000.00.

Further affiant saith not.

_____
BRUCE A. SLIVNICK

Sworn and subscribed
before me on June 17, 2020

_____
NOTARY PUBLIC

ELLA SAZONOVA
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission
October

# EXHIBIT B



**Nationwide®**

# Certification

I, <u>Ebone M Lewis</u>, as a duly authorized <u>Scottsdale Insurance Company</u> associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of <u>BCS0024150, 03-01-2011 to 03-01-2012</u> was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

<u>Signature</u>

<u>EBONE M LEWIS</u>
Print Name

<u>CL Lead Processor</u>
Title

<u>July 30, 2021</u>
Date

# ADDENDUM

**Some internal notes, stamps or typing on the Declaration sheet may appear. The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, inspection fees or taxes, or additional instructional stamps may have appeared on the policy received by the insured but may not appear on this copy.**



**National Casualty Company**

Scottsdale Indemnity Company

SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

## CLAIM REPORTING
## INFORMATION

Your insurance policy has been placed with the Scottsdale Insurance Group, a subsidiary of the Nationwide Insurance Company. The Scottsdale Insurance Group is a reliable, service-oriented group of companies that will help protect you against certain losses.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact the Scottsdale Insurance Group 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our Web site at www.scottsdaleins.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our Web site at **www.scottsdaleins.com** |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible:<br><br>• Your policy number<br><br>• Date, time and location of the loss/accident<br><br>• Details of the loss/accident<br><br>• Name, address and phone number of any involved parties<br><br>• If applicable, name of law enforcement agency or fire department along with the incident number<br><br>     **Please refer to your policy for specific claim reporting requirements.** |

Ex. B - p.0003

SCOTTSDALE INSURANCE COMPANY®

Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                              President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (12-09)

| Renewal of Number | **Policy Number** |
|---|---|
| NEW | BCS0024150 |

## SCOTTSDALE INSURANCE COMPANY®

Home Office:
One Nationwide Plaza — Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 (outside Arizona)
A STOCK COMPANY

### COMMON POLICY DECLARATIONS

**Item 1.   Named Insured and Mailing Address**

ORION RESIDENTIAL ADVISORS LLC;
(SEE SCHEDULE OF NAMED INSUREDS)
770 LAKE COOK RD STE 350
DEERFIELD IL 60015

**Agent Name and Address**

WESTROPE & ASSOCIATES
801 W 47TH ST STE 500
KANSAS CITY MO 64112-1239

Agent No.: 24712        Program No.: NONE

**Item 2.   Policy Period   From:** 03-01-2011   **To:** 03-01-2012   **Term:** 1 Year

12:01 A.M., Standard Time at you mailing address

Business Description   PROPERTY OWNER/MANAGER

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial General Liability Coverage Part | $ 65,972.00 |
| Commercial Property Coverage Part | $ NOT COVERED |
| Commercial Crime Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Auto (Business Auto or Truckers) Coverage Part | $ NOT COVERED |
| Commercial Garage Coverage Part | $ NOT COVERED |
| Professional Liability Coverage Part | $ NOT COVERED |
|  | $ |
|  | $ |
| SIC Terrorism | $ 3,299.00 |
|  | $ |
| **Total Policy Premium** | $ 69,271.00 |
|  | $ |
| Total Taxes, Surcharges or Fees | $ 555.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (12-00)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy No. BCS0024150

Effective Date: 03-01-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

OPS-D-1 (cont.)
TAXES, SURCHARGES OR FEES BREAKDOWN :

| | |
|---|---|
| INSPECTION FEE | $ 555.00 |
| TOTAL TAXES, SURCHARGES OR FEES | $ 555.00 |

UTS-126L (10-93)

Home Office Copy

Ex. B - p.0006

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0024150                        Effective Date: 03-01-11
                                                     12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS          Agent No. 24712

ORION RESIDENTIAL ADVISORS LLC;

ORION RESIDENTIAL MANAGEMENT LLC;

ORION RESIDENTIAL MANAGEMENT -
TEXAS LLC;

ORION RESIDENTIAL MANAGEMENT -
ARIZONA LLC;

ORION RESIDENTIAL MANAGEMENT -
KANASA LLC;

ORION RESIDENTIAL MANAGEMENT -
WASHINGTON LLC;

ORION RESIDENTIAL MANAGEMENT -
GEORGIA LLC;

ORION INVESTMENT ADVISORS LLC;

ORION AT HERMOSA POINTE;

ORION-POSADA VALLARTA ASSOCIATE,
LLC;

ASHTON GLEN APARTMENTS;

ASHTON GLEN APARTMENTS - FRIP, LLC;

CITI ON CAMELBACK;

ORION CAMELBACK, LLC;

ORION AT KILLIAN CREEK;

ORION-KILLIAN INVESTMENT ASSOCIATES
LLC;

ORION AT GWINNETT POINTE;

ORION-DUNLEAF ASSOCIATES, LLC;

ORION AT ROSWELL VILLAGE;

ORION-ROSWELL ASSOCIATES LLC;

ORION AT DEERFIELD PARK;

ORION-MILTON ASSOCIATES LLC;

ORIAN AT OAK HILL;

UTS-SP-1 (8-96)

Home Office Copy

Ex. B - p.0007

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0024150

Effective Date: 03-01-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

---

ORION-FORT WORTH ASSOCIATES LLC;

ORION AT OVERLAND PARK;

BR PLAZA GARDENS LEASECO, LLC;

BR PLAZA GARDENS DST;

VALLEY TOWNHOMES PHASE I, IV, AND V;

VALLEY TOWNHOMES PHASE II;

VALLEY TOWNHOMES PHASE III;

BR VALLEY TOWNHOMES DST;

BR VALLEY TOWNHOMES SUB I DST;

BR VALLEY TOWNHOMES SUB II DST;

BR VALLEY TOWNHOMES SUB III DST;

BR VALLEY LEASCO LLC;

ORION AT HERITAGE SQUARE & ORION AT SYCAMORE SQUARE;

ORION PACIFIC NOTE INVESTORS, LLC;

STARWOOD GLOBAL OPPORTUNITY FUND VI - A, L.P.;

STARWOOD GLOBAL OPPORTUNITY FUND VI - B, L.P.;

SOF - VI U.S. HOLDING, II, L.L.C.;

VI PHOENIX FUNDING, L.L.C.;

GEBAM, INC.;

GEBAM, LLC;

STRATEGIC CAPITAL PARTNERS, LLC;

BLUEROCK REAL ESTATE LLC;

GIBRALT WESTCLAY PARTICIPATE, LLC;

ORION/ROBSON CAMELBACK LLC;

SKR HOLDINGS LLC;

UTS-SP-1 (8-96)

Home Office Copy

**Ex. B - p.0008**

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0024150        Effective Date: 03-01-11

                                                         12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS        Agent No. 24712

ORION/ROBSON PACIFIC NOTE INVESTORS, LLC;

BERKADIA COMMERCIAL MORTGAGE;

WACHOVIA BANK, N.A.;

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA;

JACKSON NATIONAL LIFE INSURANCE COMPANY;

FEDERAL HOME LOAN MORTGAGE CORPORATION (FREDDIE MAC);

LAUREATE CAPITAL, LLC;

PLAZA GARDEN SHOPS, INC.;

ONE CLEVELAND FINANCE, LLC;

WELLS FARGO BANK;

MIELSTONE ASSET RESOLUTION COMPANY, LLC

UTS-SP-1 (8-96)

 **SCOTTSDALE INSURANCE COMPANY**®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. BCS0024150     Effective Date: 03-01-11
                       12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS     Agent No. 24712

**COMMON POLICY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| NOTX0178CW | 02-06 | CLAIM REPORTING INFORMATION |
| UTS-COVPG | 12-09 | COVER PAGE |
| OPS-D-1 | 12-00 | COMMON POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-SP-1 | 08-96 | SCHEDULE OF NAMED INSUREDS |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 09 85 | 01-08 | DISCLOSURE PURSUANT/TERROR RISK INS ACT |
| UTS-9G | 05-96 | SERVICE OF SUIT CLAUSE |

**GENERAL LIABILITY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL LIABILITY COVERAGE PART DEC |
| CLS-SP-1L | 10-93 | GENERAL LIABILITY COVERAGE PART-EXT. |
| GLS-230S | 08-09 | MIN & ADV PREM\MIN EARNED CANC ENDT |
| CG 00 01 | 12-07 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 00 68 | 05-09 | RECRDG AND DISTRB OF MATRL OR INFO EXCL |
| CG 20 18 | 11-85 | ADDL INSD-MORTGAGEE ASSIGNEE OR RECEIVER |
| CG 20 33 | 07-04 | ADDL INS - OWNERS, LESSEES OR CONTR'S |
| CG 21 16 | 07-98 | EXCL-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 35 | 10-01 | EXCL-COV C-MEDICAL PAYMENTS |
| CG 21 44 | 07-98 | LIMIT OF COV TO DESIGNATED PREM OR PROJ |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 70 | 01-08 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |
| CG 21 96 | 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 64 | 07-98 | PESTICIDE OR HERBICIDE APPLICATION COV |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 24 26 | 07-04 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 25 04 | 05-09 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| CLS-22S | 09-03 | EMPLOYEE BENEFITS LIABILTY |
| GLS-136S | 10-95 | NOTICE OF OCCURRENCE |
| GLS-137S | 10-95 | KNOWLEDGE OF OCCURRENCE |
| GLS-138S | 10-95 | UNINTENTIONAL FAILURE TO DISCLSE HAZARDS |
| GLS-148S | 06-99 | LIABILITY DEDUCTIBLE (PER OCC/OFF) |
| GLS-152S | 12-96 | AMENDMENT TO OTHER INS CONDITION |
| GLS-282s | 04-08 | MULTI-UNIT HABITATIONAL CONVERSION EXCL |
| GLS-289S | 11-07 | KNOWN INJURY/DAMAGE EXCL-PERS & ADV INJU |
| GLS-304S | 07-08 | CROSS LIABILITY EXCLUSION |
| GLS-30S | 05-05 | CONTRACTORS SPECIAL CONDITIONS |
| GLS-58S | 12-93 | LEAD CONTAMINATION EXCLUSION |
| GLS-74S | 09-05 | AMENDMENT OF CONDITIONS |
| GLS-91S | 01-10 | HIRED AUTO & NONOWNED AUTO LIABILITY |
| UTS-131G | 03-92 | ASBESTOS EXCLUSION |
| UTS-322S | 01-09 | RESIDENTIAL BUILDING PROJECT EXCLUSION |
| UTS-3G-01 | 03-92 | BROAD NAMED INSURED |

UTS-SP-2L (12-95)      Home Office Copy

Ex. B - p.0010

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF LOCATIONS

Policy No. BCS0024150                    Effective Date: 03-01-11
                                          12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS        Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | 770 LAKE COOK RD STE 350 DEERFIELD, IL 60015 | CORP OFFICE |
| 002 | 001 | 22525 SE 64TH PL STE 268 ISSAQUAH, WA 98027 | CORP OFFICE |
| 003 | 001 | ORION AT HERMOSA POINTE 10002 N 7TH ST PHOENIX, AZ 85020 | |
| 004 | 001 | CITI ON CAMELBACK 909 E CAMELBACK RD PHOENIX, AZ 85014 | |
| 005 | 001 | ORION AT KILLIAN CREEK 2300 COUNTRY WALK SNELLVILLE, GA 30039 | |
| 006 | 001 | ORION AT KILLIAN CREEK 2300 COUNTRY WALK SNELLVILLE, GA 30039 | |
| 007 | 001 | ORION AT GWINNETT POINTE 1300 BEAVER RUIN RD NORCROSS, GA 30093 | |
| 008 | 001 | ORION AT ROSWELL VILLAGE 100 HEMINGWAY LN ROSWELL, GA 30075 | |
| 009 | 001 | ORION AT DEERFIELD PARK 13085 MORRIS RD ALPHARETTA, GA 30004 | |
| 010 | 001 | ORION AT OAK HILL 2450 OAK HILL FORT WORTH, TX 76109 | |
| 011 | 001 | ORION AT HERITAGE SQUARE 65 E OLIVE AVE GILBERT, AZ 85234 | |

UTS-SP-3 (8-96)                    Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF LOCATIONS

Policy No. BCS0024150

Effective Date: 03-01-11

12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 012 | 001 | ORION AT SYCAMORE SQUARE<br>1120 S SYCAMORE<br>MESA, AZ 85202 | |

UTS-SP-3 (8-96)

Home Office Copy

Ex. B - p.0012

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

Ex. B - p.0013

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

POLICY NUMBER: BCS0024150

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts) $**      3,299 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/ or Policy(s):**<br>BCS0024150 |
| **Additional information, if any, concerning the terrorism premium:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

IL 09 85 01 08

© ISO Properties, Inc., 2007

Page 1 of 1

Home Office Copy

**SCOTTSDALE INSURANCE COMPANY®**

| | |
|---|---|
| | **ENDORSEMENT** |
| | **NO.**_____ |
| Attached to and forming a part of | Endorsement Effective Date 03-01-11 |
| Policy No. BCS0024150 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

DIRECTOR OF INSURANCE

320 W. WASHINGTON

SPRINGFIELD, IL 62767

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

,

_____  /  _____
AUTHORIZED REPRESENTATIVE                                            DATE

UTS-9g (5-96)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. BCS0024150

Effective Date: 03-01-11

12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ 2,000,000 | Products/ Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/ Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/ Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ NOT COVERED | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 2.** Form of Business and Location of Premises

Form of business: PROPERTY OWNER/MANAGER

- [ ] Individual
- [ ] Partnership
- [ ] Joint Venture
- [ ] Trust
- [ ] Limited Liability Company
- [X] Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 65,472.00 |
| Other Premium: | $ | 500.00 |
| Total Premium: | $ | 65,972.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (08/ 01)

Home Office Copy

Ex. B - p.0018

\

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0024150

Effective Date: 03-01-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|
| 001/001 | 48925 | 16. | SWIMMING POOL/EACH |

| Class Description: | Premises/ Operations | |
|---|---|---|
| SWIMMING POOLS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | INCLUDED | INCLUDED |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|
| 001/001 | 60010 | 2,976. | UNITS/EACH |

| Class Description: | Premises/ Operations | |
|---|---|---|
| APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 22.000 | 65,472 |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCL |

| Prem. No. Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|
| | 44444 | N/A | INCL |

| Class Description: | Premises/ Operations | |
|---|---|---|
| PESTICIDE/HERBICIDE COVERAGE | Rate | Premium |
| | INCLUDED | INCLUDED |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|
| | 44444 | N/A | INCL |

| Class Description: | Premises/ Operations | |
|---|---|---|
| WAIVER OF SUBROGATION | Rate | Premium |
| | INCLUDED | INCLUDED |
| | Products/ Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

Home Office Copy

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0024150

Effective Date: 03-01-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Class Code 44444 | Exposure N/A | Basis INCL | |
|---|---|---|---|---|---|
| **Class Description:** PER LOCATION AGGREGATE | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| **Class Description:** | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| **Class Description:** | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| **Class Description:** | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

Home Office Copy

Ex. B - p.0020

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

Attached to and forming a part of
Policy No.  BCS0024150
Named Insured  ORION RESIDENTIAL ADVISORS

Endorsement Effective Date  03-01-11
12:01 A.M., Standard Time
Agent No.  24712

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM/ MINIMUM EARNED CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

MINIMUM PREMIUM  $    65,972

Item **5. Premium Audit** Condition of **SECTION IV— COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV—LIQUOR LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDITIONS** is replaced by**:**

**5.  Premium Audit**

   **a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.**  Premium shown in this Coverage Part as Advance Premium is a deposit premium only. At the close of each audit period we will compute the Earned Premium for that period and a billing notice of any Audit Premium due will be sent to the first Named Insured. The due date for the Audit Premium is the date shown as the due date on the bill. If the sum of the Advance Premium and Audit Premiums is greater than the Earned Premium, we will return the excess to the first Named Insured, subject to us retaining a Minimum Premium as shown above in the Schedule, including any premium adjustments made by endorsement to this policy during the policy period.

   **c.**  The first Named Insured must keep records of the information we need for premium computation, and provide us or our representative copies at

such times as we may request. In the event the first Named Insured fails or refuses to allow us or our representative to audit your records, we may unilaterally charge an Audit Premium for the policy period at or up to double the Minimum or Advance Premium, whichever is greater, and such Audit Premium shall be immediately due and payable on notice to the first Named Insured.

   **d.**  If you request cancellation of this Coverage Part or policy, we will retain not less than twenty-five percent (25%) of the Advance Premium, unless otherwise shown below:

   _____ %

For purposes of this endorsement, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

   Advance Premium means the premium for this Coverage Part that is stated in the policy declarations and payable in full by the first Named Insured at the inception of the policy.

   Audit Premium means the premium for this Coverage Part that is developed by calculating the difference between the Advance Premium and the Earned Premium.

GLS-230s (8-09)

Page 1 of 2

Home Office Copy

Earned Premium means the premium for this Coverage Part that is developed by applying the rate(s) in the policy to the actual premium basis for the audit period.

Minimum Premium means the lowest premium for which this Coverage Part will be written for the policy period.

_____

AUTHORIZED REPRESENTATIVE                    DATE

Home Office Copy

Ex. B - p.0022

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

CG 00 01 12 07    □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © ISO Properties, Inc., 2006 ☐

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2006    □

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** − Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** − Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments − Coverages **A** and **B.**

   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

   This insurance does not apply to:

   **a. Knowing Violation Of Rights Of Another**

     "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   **b. Material Published With Knowledge Of Falsity**

     "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   **c. Material Published Prior To Policy Period**

     "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   **d. Criminal Acts**

     "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   **e. Contractual Liability**

     "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   **f. Breach Of Contract**

     "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   **g. Quality Or Performance Of Goods − Failure To Conform To Statements**

     "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   **h. Wrong Description Of Prices**

     "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

   **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

     "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

     However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

   **j. Insureds In Media And Internet Type Businesses**

     "Personal and advertising injury" committed by an insured whose business is:

      **(1)** Advertising, broadcasting, publishing or telecasting;

      **(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006 **CG 00 01 12 07** ☐

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

Ex. B - p.0029

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Ex. B - p.0031

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Ex. B - p.0033

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006
CG 00 01 12 07 ☐

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Ex. B - p.0035

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

**CG 00 01 12 07**          ☐

Ex. B - p.0036

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Ex. B - p.0037

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

**Ex. B - p.0038**

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Ex. B - p.0039

POLICY NUMBER: BCS0024150                **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ANY PERSON OR ORGANIZATION WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING IN A CONTRACT OR AGREEMENT, EXECUTED PRIOR TO THE "OCCURRENCE" TO WHICH THIS INSURANCE APPLIES, THAT SUCH PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY

**Designation of Premises:**

PER SCHEDULE OF LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**CG 20 18 11 85**              Copyright, Insurance Services Office, Inc., 1984            **Page 1 of 1**    □

Ex. B - p.0040

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 33 07 04                    © ISO Properties, Inc., 2004                    Page 1 of 1          ☐

POLICY NUMBER: BCS0024150

**COMMERCIAL GENERAL LIABILITY**
**CG 21 16 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of  Professional Services:**

ALL PROFESSIONAL SERVICES OF ANY INSURED

(If no entry appears above, information  required to complete this endorsement will be shown in the Declarations as applicable  to  this  endorsement.)

With  respect to any  professional services shown  in the Schedule, the following  exclusion  is added  to Paragraph  **2., Exclusions**  of  **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph  2., **Exclusions**  of **Section I - Coverage B - Personal And  Advertising  Injury  Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising  injury" due to the rendering of or failure to render any  professional  service.

**CG 21 16 07 98**          Copyright, Insurance Services Office, Inc., 1997          **Page 1 of 1**

Ex. B - p.0042

POLICY NUMBER: BCS0024150

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION -  COVERAGE C -  MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
|---|
| ALL PREMISES AND CLASSIFICATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** - Coverage **C** - Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** - Supplementary Payments:

    **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc.,  2000
Home Office Copy

POLICY NUMBER: BCS0024150

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITATION OF COVERAGE TO DESIGNATED
## PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Premises:**

PER SCHEDULE OF LOCATIONS

**Project:**

N/A

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

**CG 21 44 07 98**              Copyright, Insurance Services Office, Inc., 1997              **Page 1 of 1**  ☐

Home Office Copy

Ex. B - p.0044

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

Ex. B - p.0045

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

Ex. B - p.0046

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ISO Properties, Inc., 2007   ☐

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

Ex. B - p.0049

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

    **2. Exclusions**

      This insurance does not apply to:

      **Silica Or Silica-Related Dust**

      **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

      **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

      **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

      This insurance does not apply to:

      **Silica Or Silica-Related Dust**

      **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

      **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

    **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

    **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

POLICY NUMBER: BCS0024150            **COMMERCIAL GENERAL LIABILITY**
           **CG 22 64 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PESTICIDE OR HERBICIDE APPLICATOR COVERAGE

This endorsement modifies insurance provided under the following:

     COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of Operations:**

PROPERTY OWNER

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to the operations shown in the Schedule, Paragraph **(1)(d)** of Exclusion **f.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

**CG 22 64 07 98**        Copyright, Insurance Services Office, Inc., 1997        **Page 1 of 1** ☐

POLICY NUMBER: BCS0024150

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED TO WAIVE RIGHTS OF RECOVERY, PROVIDED SUCH AGREEMENT IS MADE IN WRITING AND PRIOR TO THE LOSS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09 © Insurance Services Office, Inc., 2008 Page 1 of 1 ☐

Home Office Copy

Ex. B - p.0052

POLICY NUMBER:                                          **COMMERCIAL GENERAL LIABILITY**
                                                             **CG 24 26 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 26 07 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 1**          ☐

POLICY NUMBER: BCS0024150

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Designated Location(s):** |
| ALL LOCATIONS |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I — Coverage **A,** and for all medical expenses caused by accidents under Section I — Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

Home Office Copy

Ex. B - p.0054

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** — Coverage **A,** and for all medical expenses caused by accidents under Section **I** — Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** — Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

CG 25 04 05 09     □

Home Office Copy



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS MADE)**

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | INCL | each employee | INCL |
| | $ 1,000,000 | aggregate | | | |
| Retroactive Date: | 07/19/2006 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I—Coverages**:

**COVERAGE—EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for "damages" is limited as described in Paragraph **E.** (Section **III**—Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to "damages" only if:

   **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the "policy period"; and

**(3)** A "claim" for "damages," because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the "policy period" or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

**c.** A "claim" seeking "damages" will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a.** above.

A "claim" received and recorded by the insured within sixty (60) days after the end of the "policy period" will be considered to have been received within the "policy period," if no subsequent policy is available to cover the "claim."

**d.** All "claims" for "damages" made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including "damages" claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

"Damages" arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury," "property damage" or "personal and advertising injury."

**c. Failure To Perform A Contract**

"Damages" arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

"Damages" arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program."

**e. Inadequacy Of Performance Of Investment/ Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program."

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

"Damages" for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

**i.  Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j.  Employment-Related Practices**

''Damages'' arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.**  For the purposes of the coverage provided by this endorsement:

**1.**  All references to Supplementary Payments—Coverages **A** and **B** are replaced by Supplementary Payments—Coverages **A**, **B** and **Employee Benefits Liability**.

**2.**  Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.**  For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **4.** of **Section II—Who Is An Insured** are replaced by the following:

**2.**  Each of the following is also an insured:

**a.**  Each of your ''employees'' who is or was authorized to administer your ''employee benefit program.''

**b.**  Any persons, organizations or ''employees'' having proper temporary authorization to administer your ''employee benefit program'' if you die, but only until your legal representative is appointed.

**c.**  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**4.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.**  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the ''policy period,'' whichever is earlier.

**b.**  Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.**  For the purposes of the coverage provided by this endorsement, Paragraph **3.** of **Section II—Who Is An Insured** does not apply.

**E.**  For the purposes of the coverage provided by this endorsement, **Section III—Limits Of Insurance** is replaced by the following:

**1.  Limits Of Insurance**

**a.**  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)**  Insureds;

**(2)**  ''Claims'' made or ''suits'' brought;

**(3)**  Persons or organizations making ''claims'' or bringing ''suits'';

**(4)**  Acts, errors or omissions; or

**(5)**  Benefits included in your ''employee benefit program.''

**b.**  The Aggregate Limit is the most we will pay for all ''damages'' because of acts, errors or omissions negligently committed in the ''administration'' of your ''employee benefit program.''

**c.**  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all ''damages'' sustained by any one ''employee,'' including ''damages'' sustained by such ''employee's'' dependents and beneficiaries, as a result of:

**(1)**  An act, error or omission; or

**(2)**  A series of related acts, errors or omissions

negligently committed in the ''administration'' of your ''employee benefit program.''

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the ''employee benefit program.''

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the "policy period" shown in the Declarations of the policy to which this endorsement is attached, unless the "policy period" is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay "damages" on behalf of the insured applies only to the amount of "damages" in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all "damages" sustained by any one "employee," including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those "damages"; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**F.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV— Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim." To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer "damages" as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

Ex. B - p.0059

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the "policy period" shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a "policy period" which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision

and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** We will provide a Basic Extended Reporting Period as described in **2.** below, if:

**a.** We cancel or do not renew this endorsement for reasons other than nonpayment of premium; or

**b.** We renew this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to acts, errors or omissions on a claims-made basis.

**2.** The Basic Extended Reporting Period is provided without additional charge. This period starts with the end of the "policy period" and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to "claims" covered under any subsequent insurance you purchase.

**3.** We will offer a Supplemental Extended Reporting Period if you cancel or nonrenew this endorsement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

You may also purchase a Supplemental Extended Reporting Period if:

**a.** We cancel or do not renew this endorsement for reasons other than nonpayment of premium; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to acts, errors or omissions on a claims-made basis.

You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen. An additional premium charge of twenty-five percent (25%) of the expiring annual premium of this endorsement is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within thirty (30) days of the cancellation or nonrenewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within thirty (30) days of policy termination.

**4.** The Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of insurance, exclusions and conditions, the policy is extended to apply to "claims" first made against the insured during the Basic Extended Reporting Period, if applicable, or the Supplemental Extended Reporting Period, if purchased, but only to "claims" for acts, errors or omissions that occur before the end of the "policy period" (but not before the Retroactive Date shown in the Schedule of this endorsement).

**5.** Extended Reporting Periods do not reinstate or increase the limits of insurance of this endorsement. "Claims" for acts, errors or omissions which

are first received and recorded during the Basic Extended Reporting Period, if applicable, or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the "policy period."

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

**1.** "Administration" means:

**a.** Providing information to "employees," including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit program" means a program providing some or all of the following benefits to "employees," whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Ex. B - p.0061

    **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**I.** For the purposes of the coverage provided by this endorsement, Definitions **3.**, **7.** and **21.** in the Definitions Section are replaced by the following:

    **3.** ''Claim'' means any demand, or ''suit,'' made by an ''employee'' or an ''employee's'' dependents and beneficiaries, for ''damages'' as the result of an act, error or omission.

    **7.** ''Employee'' means a person actively employed, formerly employed, on leave of absence or disabled, or retired. ''Employee'' includes a ''leased worker.'' ''Employee'' does not include a ''temporary worker.''

    **21.** ''Suit'' means a civil proceeding in which ''damages'' because of an act, error or omission to which this insurance applies are alleged. ''Suit'' includes:

        **a.** An arbitration proceeding in which such ''damages'' are claimed and to which the insured must submit or does submit with our consent; or

        **b.** Any other alternative dispute resolution proceeding in which such ''damages'' are claimed and to which the insured submits with our consent.

---

AUTHORIZED REPRESENTATIVE               DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT**

**NO.**_____

Attached to and forming a part of
Policy No. BCS0024150
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date  03-01-11
12:01 A.M., Standard Time
Agent No.  24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of
SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

An ''occurrence,'' or offense originally reported to your workers compensation carrier may later develop into
a claim which may be covered by this policy. If you notify us as soon as practicable after you become aware
that the ''occurrence'' or offense may result in a claim against this policy, you will not be deemed in violation
of the reporting requirements of this condition.

_____/_____

AUTHORIZED REPRESENTATIVE                       DATE

GLS-136s (10-95)

Home Office Copy

**Ex. B - p.0063**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY® | **ENDORSEMENT** NO._____ |
| Attached to and forming a part of | Endorsement Effective Date  03-01-11 |
| Policy No. BCS0024150 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of
SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Knowledge of an ''occurrence,'' offense, claim, or ''suit'' by the agent, servant or employee of any insured
will not in itself constitute knowledge by the Named Insured unless an executive officer of the Named Insured's
organization received such notice from its agent, servant or employee.

_____ / _____
AUTHORIZED REPRESENTATIVE             DATE

GLS-137s (10-95)

Home Office Copy

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY**® | **ENDORSEMENT**<br>**NO.**_____ |
| Attached to and forming a part of<br>Policy No. BCS0024150 | Endorsement Effective Date 03-01-11<br>12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **6. Representations**, of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Your failure to disclose all hazards, prior ''occurrences'' or offenses existing as of the inception date of the policy will not prejudice the coverage afforded by this policy provided such failure to disclose all hazards, prior ''occurrences'' or offenses is not intentional.

_____ /_____
AUTHORIZED REPRESENTATIVE       DATE

GLS-138s (10-95)

Home Office Copy

**Ex. B - p.0065**



| | ENDORSEMENT NO. _____ |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY**® | |

| Attached to and forming a part of | Endorsement Effective Date  03-01-11 |
|---|---|
| Policy No.  BCS0024150 | 12:01 A.M., Standard Time |
| Named Insured  ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT
### (Per Occurrence or Offense)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $          2,500 | per occurrence |
| Property Damage Liability | $          2,500 | per occurrence |
| Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) | $          2,500 | per offense |

APPLICATION OF ENDORSEMENT

Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "property damage," and "personal and advertising injury," ("personal injury" and "advertising injury") however caused:

NO LIMITATION

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability ("Personal Injury" and "Advertising Injury") Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as

applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and all legal and loss adjustment expenses.

3.  The deductible amounts stated in the Schedule above apply:

    a.  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    c.  Under Personal and Advertising Liability ("Personal Injury" and "Advertising Injury") Coverage, to all damages because of "personal injury" or "advertising injury"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,   Insurance Services Office, Inc., 1998

Home Office Copy

GLS-148s (6-99)

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

4. The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply

Irrespective of the application of the deductible amount.

5. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____

AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,  Insurance Services Office, Inc., 1998

GLS-148s (6-99)

Home Office Copy

Ex. B - p.0067

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

Attached to and forming a part of
Policy No. BCS0024150
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-11
12:01 A.M., Standard Time
Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition **4. Other Insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

  **a. Primary Insurance**

    This insurance is primary except when **b.** below applies.

  **b. Excess Insurance**

    This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

    (1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (2)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (3)  If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I); or

    (4)  That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____ / _____
AUTHORIZED REPRESENTATIVE         DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

GLS -152s (12-96)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "property damage" included in the "products-completed operations hazard" to any structure(s) converted, including all operations necessary on the job site for the conversion, into:

1. A residential townhouse, townhome, or other multi-unit habitational building(s) designed or developed for sale to an individual or multiple owners;

2. Residential condominiums or residential cooperatives; or

3. Multi-use or mixed use projects which include any of the occupancies described in items 1. and 2. above,

regardless if the conversion took place prior to, during or after the policy period.

However, this exclusion shall not apply to any of "your work" performed on such structure(s), including operations necessary on the job site for the conversion, if "your work" was not conducted as part of the conversion operations or related in any way to the conversion operations or included within those conversion operations.

_____ /

AUTHORIZED REPRESENTATIVE                    DATE

GLS-282s (4-08)                    Page 1 of 1

Ex. B - p.0069

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____   /_____
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

Ex. B - p.0070

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "bodily injury" or "property damage" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

The following is added to **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "personal and advertising injury" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

_____       /_____
AUTHORIZED REPRESENTATIVE                                    DATE

GLS-304s (7-08)                                          Page 1 of 1

Ex. B - p.0071

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

The following Condition is added to the policy.

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy; and

2. Coverage equal to or greater than the coverages provided by this policy.

Failure to comply with this condition does not alter the coverage provided by this policy. However, should you fail to comply, a premium charge will be made at the time of audit. At audit, the premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed.

At audit, if the policy does not contain the applicable classification and rate for the work performed, we will multiply our usual and customary rate per $1,000 payroll for that classification by the net modification factor, if any, applied to the policy rates.

For purposes of this endorsement, "total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

AUTHORIZED REPRESENTATIVE                    DATE

GLS-30s (5-05)                    Page 1 of 1

**Ex. B - p.0072**


## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT**

**NO.**_____

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 03-01-11 |
| Policy No. BCS0024150 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement excludes "occurrences" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or from the operations of the insured, which result in:

a.  "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b.  "Property Damage" arising from any form of lead;

c.  "Personal Injury" arising from any form of lead;

d.  "Advertising Injury" arising from any form of lead;

e.  **Medical Payments** arising from any form of lead;

f.  Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

g.  Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ / _____
AUTHORIZED REPRESENTATIVE                              DATE

GLS-58s (12-93)

Home Office Copy

Ex. B - p.0073

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS COVERAGE PART**

The Condition entitled **When We Do Not Renew** is deleted in its entirety.

_____     _____
AUTHORIZED REPRESENTATIVE                          DATE

GLS-74s (9-05)                                   Page 1 of 1

Ex. B - p.0074



| | ENDORSEMENT NO. _____ |
|---|---|

**SCOTTSDALE INSURANCE COMPANY®**

Attached to and forming a part of

Policy No. BCS0024150

Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-11
12:01 A.M., Standard Time

Agent No. 24712

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | $          500 |
| Nonowned Auto Liability | $          Incl |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.

**A. HIRED AUTO LIABILITY**

The insurance provided under **COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**B. NONOWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the use of any "nonowned auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**C.** With respect to this endorsement, **SECTION I— COVERAGE, COVERAGE A BODILY INJURY AND**

**PROPERTY DAMAGE,** paragraph **2. Exclusions** is amended as follows:

1. The following are deleted in their entirety:

   **e. Employer's Liability;**

   **g. Aircraft, Auto or Watercraft;**

   **h. Mobile Equipment;** and

   **j. Damage to Property.**

2. The following are added:

   This insurance does not apply to:

   **a.** "Bodily injury":

   **(1)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to an "employee" or co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or

---

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

Home Office Copy

Ex. B - p.0075

to your "volunteer workers" while performing duties related to the conduct of your business.

**(2)** To your spouse, child, parent, brother or sister, or the spouse, child, parent, brother, or sister of the "employee" co-"employee," "volunteer worker," your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company) as a consequence of Paragraph **2.a.(1)** above.

**(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **2.a.(1)** or **2.a.(2)** above.

**(4)** Arising out of the providing or failure to provide professional health care services.

This exclusion applies:

**(a)** Whether the insured may be liable as an employer or in any other capacity; and

**(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**b.** "Property damage" to property:

**(1)** Owned, occupied, used or being transported by; or

**(2)** Rented or loaned to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you or any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), or members (if you are a limited liability company).

**D.** With respect to this endorsement, the following are not Insureds under **SECTION II—WHO IS AN INSURED:**

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any

co-"employee" of such person injured in the course of employment;

**2.** Any partners or members (if you are a partnership or joint venture), members (if you are a limited liability company) or executive officer with respect to any "auto" owned by such partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), executive officer or members of their households;

**3.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

**4.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

**5.** Any person or organization with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**E.** With respect to this endorsement, the following definitions are added to **SECTION V—DEFINITIONS:**

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), or members of their households.

**3.** "Nonowned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. However, if you are a partnership or limited liability company a "nonowned auto" does not include any auto owned by any partner or member.

_____/_____
AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

Home Office Copy

Ex. B - p.0076

| SCOTTSDALE INSURANCE COMPANY® | ENDORSEMENT NO._____ |
|---|---|
| Attached to and forming a part of<br>Policy No. BCS0024150<br>Named Insured ORION RESIDENTIAL ADVISORS | Endorsement Effective Date 03-01-11<br>12:01 A.M., Standard Time<br>Agent No. 24712 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:

1.  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2.  The use of asbestos in construction or manufacturing any good, product or structure; or

3.  The removal of asbestos from any good, product or structure; or

4.  The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

UTS-131g (3-92)                    Home Office Copy

Ex. B - p.0077

SCOTTSDALE INSURANCE COMPANY®

ENDORSEMENT NO. _____

Attached to and forming a part of

Policy No. BCS0024150

Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-11
12:01 A.M., Standard Time

Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RESIDENTIAL BUILDING PROJECT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to damages because of "bodily injury", "property damage", "personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way related to a "residential project".

For those items identified below with an "x" in the corresponding box, this exclusion shall not apply to "your work":

1. That consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

2. In states other than AZ, CA, CO, LA, NV, TX and WA that consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

3. In the following state(s):

4. At the following specific project(s) or location(s):

5. In states other than AZ, CA, CO, LA, NV, TX and WA that involve the original development or original construction of, and which commences

during the policy period on no more than an initial twelve (12) of, any of the following types of individual living units: Single family homes, townhouses, townhomes, residential condominium or cooperative units, duplex units, any type of structural units converted into condominium units, or any other type of domicile unit intended for individual or collective residential ownership.

6. That is included within the following Class Code(s), Business Description(s) or designated operations:

7. That is not included within the "products-completed operations hazard" definition.

For purposes of this endorsement:

"Residential project" shall mean any building construction project, including structural repair, renovation or remodeling operations, involving one or more single-family homes, townhouses, townhomes, residential condominiums or cooperatives, duplexes, any type of structure converted into condominiums, or any other type of domicile intended for individual or collective residential ownership, and shall include all buildings appurtenant these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use

UTS-322s (1-09)

Page 1 of 2

Home Office Copy

Ex. B - p.0078

buildings which contain both residential units and commercial space, and shall include all buildings appurtenant these structures.

"Residential project" shall not mean apartments unless "your work" involves converting apartments into condo-

miniums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE                    DATE

UTS-322s (1-09)                              Page 2 of 2

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

# ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| BCS0024150 | 03-01-11 | ORION RESIDENTIAL ADVISORS LLC; | 24712 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PERFORMERS, PARTICIPANTS, OR STAGE HANDS EXCLUSION

This policy does not apply to "bodily injury" to any person, performer, participant, or stage hand while practicing for or participating in any theatrical or musical stage performance or exhibition conducted, directed, produced or sponsored by any "insured."

_____/_____

AUTHORIZED REPRESENTATIVE                 DATE

UTS-3g-01 (3-92)

Ex. B - p.0080



## SCOTTSDALE INSURANCE COMPANY®

# CHANGE ENDORSEMENT NO. 001

| Policy No. | BCS0024150 | Effective Date: 07-21-11 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

---

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by ☒ below.**

| | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $ -1,559.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

---

### CHANGE DESCRIPTION

IN CONSIDERATION OF A RETURN PREMIUM OF $1,559.00, IT IS AGREED
THAT THE EXTENSION OF SUPPLEMENTAL DECLARATIONS IS AMENDED, PER
ATTACHED.

IT IS FURTHER AGREED THAT THE NAMED INSURED HAS BEEN AMENDED TO
DELETE:

ORION AT HERITAGE SQUARE

ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

---

### PREMIUM CHANGE

| Additional $ | Return $ -1,559.00 |
|---|---|

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. B - p.0081

# SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0024150

Named Insured ORION RESIDENTIAL ADVISORS

Effective Date: 07-21-11
12:01 A.M., Standard Time

Agent No. 24712

---

**CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.**

**THE FOLLOWING CLASS CODE INFORMATION IS ADDED:**

| Code No. 47052 | Premium Basis GROSS SALES | Premises/ Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure $27,600 | Rate 3.174 | ADJ. ANNUAL Premium 54.00 |
| Classification: REAL ESTATE PROPERTY MANAGED (LOC #11) (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium INCL |

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 48925 | Premium Basis SWIMMING POOL | Premises/ Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 14 | Rate Included | ADJ. ANNUAL Premium Included |
| Classification: SWIMMING POOLS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/ Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/ Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 2,856 | Rate 22.000 | ADJ. ANNUAL Premium -1,613.00 |
| Classification: APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium INCL |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/ Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

Ex. B - p.0082



**SCOTTSDALE INSURANCE COMPANY**®

# CHANGE ENDORSEMENT NO. 002

Policy No.   BCS0024150

Effective Date:  10-04-11
12:01 A.M., Standard Time

Named Insured   ORION RESIDENTIAL ADVISORS

Agent No.   24712

---

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

| | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $   -2,281.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

---

**CHANGE DESCRIPTION**

IN CONSIDERATION OF THE RETURN PREMIUM OF $2,281.00, IT IS AGREED
THAT THE SCHEDULE OF LOCATIONS IS AMENDED PER ATTACHED.
IT IS FURTHER AGREED THAT ITEM 1. NAMED INSURED NAME HAS BEEN
AMENDED TO DELETED THE FOLLOWING:

      ORION AT KILLIAN CREEK

      ORION-KILLIAN INVESTMENT ASSOCIATES LLC

ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

---

**PREMIUM CHANGE**

| Additional $ | Return $   -2,281.00 |
|---|---|

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0024150

Effective Date: 10-04-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| *** 005 | *** 001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED: ORION AT KILLIAN CREEK 2300 COUNTRY WALK SNELLVILLE, GA 30039 | |
| 006 | 001 | ORION AT KILLIAN CREEK 2300 COUNTRY WALK SNELLVILLE, GA 30039 | |

UTS-3L (8-86)

Home Office Copy

# SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0024150

Effective Date: 10-04-11

12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

---

**CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.**

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 48925 | Premium Basis SWIMMING POOL | Premises/ Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 12 | Rate | ADJ. ANNUAL Premium |
| Classification: SWIMMING POOLS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Included | Included |
| | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |
| | | Included | Included |

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/ Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 2,600 | Rate | ADJ. ANNUAL Premium |
| Classification: APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | 22.000 | -2,281.00 |
| | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |
| | | | INCL |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/ Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/ Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/ Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 003

| Policy No. | BCS0024150 | Effective Date: 10-28-11 |
| --- | --- | --- |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

| | | |
| --- | --- | --- |
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $        1,436.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

### CHANGE DESCRIPTION

THIS POLICY IS AMENDED AS FOLLOWS:

THE GENERAL LIABILITY EXPOSURE AMOUNT FOR CLASS CODE 60010, FOR THE STATE OF ILLINOIS, LOCATION NUMBER 1, BUILDING NUMBER 1 HAS BEEN CHANGED FROM 2,600 TO 2,792.

### PREMIUM CHANGE

| Additional $     1,436.00 | Return $ |
| --- | --- |

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. B - p.0086

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0024150

Effective Date: 10-28-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| *** 013 | *** 001 | THE FOLLOWING PREMISES ARE ADDED: LA COSTA AT DOBSON RANCH 1820 WEST LINDNER AVE MESA, AZ 85202 | |

UTS-3L (8-86)

Home Office Copy

Ex. B - p.0087



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0024150

Effective Date: 10-28-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED. | |
|---|---|

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 2,792 | Rate 22.000 | ADJ. ANNUAL Premium 1,436.00 |
| Classification: APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium INCL |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

\

 **SCOTTSDALE INSURANCE COMPANY®**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0024150                     Effective Date: 10-28-11
                                          12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS          Agent No. 24712

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 001/001 | | 47052 | $27,600. | GROSS SALES/NEAREST THOUSAND |

Class Description:
REAL ESTATE PROPERTY MANAGED (LOC #11) (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT)

| Premises/Operations | |
|---|---|
| Rate | Premium |
| 3.174 | 88 |

| Products/Comp Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCL |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 001/001 | | 48925 | 12. | SWIMMING POOL/EACH |

Class Description:
SWIMMING POOLS (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT)

| Premises/Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCLUDED |

| Products/Comp Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 001/001 | | 60010 | 2,792. | UNITS/EACH |

Class Description:
APARTMENT BUILDINGS (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT)

| Premises/Operations | |
|---|---|
| Rate | Premium |
| 22.000 | 61,424 |

| Products/Comp Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCL |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | 44444 | N/A | INCL |

Class Description:
PESTICIDE/HERBICIDE COVERAGE

| Premises/Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCLUDED |

| Products/Comp Operations | |
|---|---|
| Rate | Premium |
| INCLUDED | INCLUDED |

CLS-SP-1L (10-93)                     Home Office Copy

\

 **SCOTTSDALE INSURANCE COMPANY**®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0024150      Effective Date: 10-28-11

12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS      Agent No. 24712

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | 44444 | N/A | INCL |

| Class Description: | Premises/Operations | |
|---|---|---|
| WAIVER OF SUBROGATION | Rate | Premium |
| | INCLUDED | INCLUDED |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | 44444 | N/A | INCL |

| Class Description: | Premises/Operations | |
|---|---|---|
| PER LOCATION AGGREGATE | Rate | Premium |
| | INCLUDED | INCLUDED |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

CLS-SP-1L (10-93)      Home Office Copy

Ex. B - p.0090



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 004

| | | |
|---|---|---|
| Policy No. | BCS0024150 | Effective Date: 11-18-11<br>12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by ☒ below.**

|   | Coverage | Amount |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $          -744.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

### CHANGE DESCRIPTION

IN CONSIDERATION OF A RETURN PREMIUM OF $744.00, IT IS AGREED THAT
THE SCHEDULE OF LOCATIONS AND THE EXTENSION OF SUPPLEMENTAL
DECLARATIONS ARE AMENDED, PER ATTACHED.

IT IS ALSO AGREED THAT THE FOLLOWING NAMED INSURED IS DELETED FROM
THE SCHEDULE OF NAMED INSUREDS:

   ORION AT SYCAMORE SQUARE


ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

### PREMIUM CHANGE

| | |
|---|---|
| Additional $ | Return $         -744.00 |

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. B - p.0091

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0024150

Effective Date: 11-18-11
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|-----------|------------------------------------------------------|-----------|
| *** 012 | *** 001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED: ORION AT SYCAMORE SQUARE 1120 S SYCAMORE MESA, AZ 85202 | |

UTS-3L (8-86)

Home Office Copy



## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0024150

Named Insured ORION RESIDENTIAL ADVISORS

Effective Date: 11-18-11
12:01 A.M., Standard Time

Agent No. 24712

| CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED. | |
|---|---|

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 2,672 | Rate 22.000 | ADJ. ANNUAL Premium −744.00 |
| Classification: APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium INCL |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

Ex. B - p.0093



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 005

| | | |
|---|---|---|
| Policy No. | BCS0024150 | Effective Date: 12-14-11 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

---

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

| | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | NO CHARGE |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

---

### CHANGE DESCRIPTION

THIS POLICY IS AMENDED AS FOLLOWS:

THE FOLLOWING FORM HAS BEEN ADDED PER ATTACHED:

UTS-410G        02-11      AMENDMENT OF CANCELLATION NOTICE

---

### PREMIUM CHANGE

| | |
|---|---|
| Additional $ NO CHARGE | Return $ NO CHARGE |

_____

AUTHORIZED AGENT

**UTS-244L (6-92)**

Ex. B - p.0094

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CANCELLATION NOTICE TO FIRST NAMED INSURED AND SCHEDULED PARTY(IES)

The following Conditions are added to the Cancellation Condition:

1.  If we cancel this policy for any reason other than nonpayment of premium, we will mail written notice of cancellation to the first Named Insured and to any party(ies) at their designated mailing address(es), shown in the Schedule below, at least _____ days before the effective date of cancellation.

2.  If we fail to mail such notice as indicated in **1.** above, any coverage afforded to the party(ies) will remain in effect:

    **a.** For the number of days shown in **1.** above from the date a written notice of cancellation is actually mailed;

    **b.** Until the effective date of replacement coverage is obtained elsewhere by the first Named Insured; or

    **c.** Until the termination date requested by the Named Insured,

    whichever occurs first.

### SCHEDULE

**Name and Address of Party(ies):**

_____     /     _____
AUTHORIZED REPRESENTATIVE                              DATE

Ex. B - p.0095

EXHIBIT C


**Nationwide®**

# Certification

I, <u>Ebone M Lewis</u>, as a duly authorized <u>Scottsdale Insurance Company</u> associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of <u>BCS0027068, 03-01-2012 to 03/01/2013</u> was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.


_____        <u>July 30, 2021</u>_____
Signature                                               Date

<u>EBONE M LEWIS</u>_____
Print Name

<u>CL Lead Processor</u>_____
Title

# ADDENDUM

**Some internal notes, stamps or typing on the Declaration sheet may appear.  The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, inspection fees or taxes, or additional instructional stamps may have appeared on the policy received by the insured but may not appear on this copy.**



**SCOTTSDALE INSURANCE COMPANY** ®

## National Casualty Company

### Scottsdale Indemnity Company

**SCOTTSDALE**
SURPLUS LINES INSURANCE COMPANY

## CLAIM REPORTING
## INFORMATION

Your insurance policy has been placed with the Scottsdale Insurance Group, a subsidiary of the Nationwide Insurance Company. The Scottsdale Insurance Group is a reliable, service-oriented group of companies that will help protect you against certain losses.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact the Scottsdale Insurance Group 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our Web site at www.scottsdaleins.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our Web site at **www.scottsdaleins.com** |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible:<br><br>• Your policy number<br><br>• Date, time and location of the loss/accident<br><br>• Details of the loss/accident<br><br>• Name, address and phone number of any involved parties<br><br>• If applicable, name of law enforcement agency or fire department along with the incident number<br><br>**Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (2-06)

SCOTTSDALE INSURANCE COMPANY®

Home Office:

One Nationwide Plaza • Columbus, Ohio 43215

Administrative Office:

8877 North Gainey Center Drive • Scottsdale, Arizona 85258

1-800-423-7675

A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (12-09)

**— COMMON POLICY DECLARATIONS —**

| BCS0024150 | | **Policy Number** |
|---|---|---|
| Renewal of Number | ▲ **SCOTTSDALE INSURANCE COMPANY®** | BCS0027068 |

Home Office:
One Nationwide Plaza o Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive o Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**ITEM 1.** Named Insured and Mailing Address

ORION RESIDENTIAL ADVISORS LLC;
(SEE SCHEDULE OF NAMED INSUREDS)
770 LAKE COOK RD, STE 350
DEERFIELD IL 60015

Agent Name and Address

WESTROPE & ASSOCIATES
1100 WALNUT ST STE 3200
KANSAS CITY MO 64106

Agent No.: 24712          Program No.: NONE

| **ITEM 2.** Policy Period | From: 03-01-2012 | To: 03-01-2013 | Term: 1 Year |
|---|---|---|---|

12:01 A.M., Standard Time at the mailing address shown in ITEM 1.

Business Description: PROPERTY OWNER/MANAGER

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium Summary |
|---|---|---|
| Commercial General Liability Coverage Part | $ | 66,444.00 |
| Commercial Property Coverage Part | $ | NOT COVERED |
| Commercial Crime And Fidelity Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |
| SIC Terrorism | $ | 3,322.00 |
| **Total Policy Premium** | $ | 69,766.00 |
| | $ | |
| | $ | |
| **Policy Total** | $ | **69,766.00** |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENT(S), IF ANY,
COMPLETE THE ABOVE-NUMBERED POLICY.

OPS-D-1 (8-10)

Home Office Copy

**Ex. C - p.0005**

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0027068

Effective Date: 03-01-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

ORION RESIDENTIAL ADVISORS LLC;

ORION RESIDENTIAL MANAGEMENT LLC;

ORION RESIDENTIAL MANAGEMENT –
TEXAS LLC;

ORION RESIDENTIAL MANAGEMENT –
ARIZONA LLC;

ORION RESIDENTIAL MANAGEMENT –
KANSAS LLC;

ORION RESIDENTIAL MANAGEMENT –
WASHINGTON LLC;

ORION RESIDENTIAL MANAGEMENT –
GEORGIA LLC;

ORION INVESTMENT ADVISORS LLC;

ORION AT HERMOSA POINTE;

ORION-POSADA VALLARTA ASSOCIATE,
LLC;

CITI ON CAMELBACK;

ORION CAMELBACK, LLC;

ORION AT GWINNETT POINTE;

ORION-DUNLEAF ASSOCIATES, LLC;

ORION AT ROSWELL VILLAGE;

ORION-ROSWELL ASSOCIATES LLC;

ORION AT DEERFIELD PARK;

ORION-MILTON ASSOCIATES LLC;

ORION AT OAK HILL;

ORION-FORT WORTH ASSOCIATES LLC;

LA COSTA AT DOBSON RANCH;

STARWOOD GLOBAL OPPORTUNITY FUND VI
– A, L.P.;

STARWOOD GLOBAL OPPORTUNITY FUND VI
– B, L.P.;

UTS-SP-1 (8-96)

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0027068          Effective Date: 03-01-12
                                                          12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS       Agent No. 24712

SOF - VI U.S. HOLDING, II, L.L.C.;

VI PHOENIX FUNDING, L.L.C.;

GEBAM, INC.;

GEBAM, LLC;

STRATEGIC CAPITAL PARTNERS, LLC;

BLUEROCK REAL ESTATE LLC;

GIBRALT WESTCLAY PARTICIPATE, LLC;

ORION/ROBSON CAMELBACK, LLC;

SKR HOLDINGS LLC;

ORION/ROBSON PACIFIC NOTE
INVESTORS,LLC;

ORION AT HERITAGE SQUARE;

ORION PACIFIC NOTE INVESTORS, LLC;

ORION AT MOUNTAIN VIEW;

BR VALLEY TOWNHOMES DST;

BR VALLEY TOWNHOMES SUB I DST;

BR VALLEY TOWNHOMES SUB II DST;

BR VALLEY TOWNHOMES SUB III DST;

BR VALLEY LEASCO, LLC;

VILLAS AT OAK HILL;

GATEWAY PUBLIC FACILITY
CORPORATION;

MIDLAND PORTFOLIO;

MIDLAND INVESTORS, LLC

UTS-SP-1 (8-96)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. BCS0027068

Effective Date: 03-01-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

**COMMON POLICY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| NOTX0178CW | 02-06 | CLAIM REPORTING INFORMATION |
| UTS-COVPG | 12-09 | COVER PAGE |
| OPS-D-1 | 08-10 | COMMON POLICY DECLARATIONS |
| UTS-SP-1 | 08-96 | SCHEDULE OF NAMED INSUREDS |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 47 | 09-11 | ILLINOIS CHANGES – CIVIL UNION |
| IL 09 85 | 01-08 | DISCLOSURE PURSUANT/TERROR RISK INS ACT |
| UTS-9G | 05-96 | SERVICE OF SUIT CLAUSE |

**GENERAL LIABILITY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL LIABILITY COVERAGE PART DEC |
| CLS-SP-1L | 10-93 | GENERAL LIABILITY COVERAGE PART-EXT. |
| GLS-230S | 08-09 | MIN & ADV PREM\MIN EARNED CANC ENDT |
| CG 00 01 | 12-07 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 00 68 | 05-09 | RECRDG AND DISTRB OF MATRL OR INFO EXCL |
| CG 20 18 | 11-85 | ADDL INSD-MORTGAGEE ASSIGNEE OR RECEIVER |
| CG 20 33 | 07-04 | ADDL INS – OWNERS, LESSEES OR CONTR'S |
| CG 21 16 | 07-98 | EXCL-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 35 | 10-01 | EXCL-COV C-MEDICAL PAYMENTS |
| CG 21 44 | 07-98 | LIMIT OF COV TO DESIGNATED PREM OR PROJ |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 54 | 01-96 | EXCL – DESIGNATED OPERATIONS |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 70 | 01-08 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |
| CG 21 96 | 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 64 | 07-98 | PESTICIDE OR HERBICIDE APPLICATION COV |
| CG 22 70 | 11-85 | REAL ESTATE PROPERTY MANAGED |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 24 26 | 07-04 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 25 04 | 05-09 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| CLS-22S | 09-03 | EMPLOYEE BENEFITS LIABILTY |
| GLS-136S | 10-95 | NOTICE OF OCCURRENCE |
| GLS-137S | 10-95 | KNOWLEDGE OF OCCURRENCE |
| GLS-138S | 10-95 | UNINTENTIONAL FAILURE TO DISCLSE HAZARDS |
| GLS-148S | 06-99 | LIABILITY DEDUCTIBLE (PER OCC/OFF) |
| GLS-152S | 12-96 | AMENDMENT TO OTHER INS CONDITION |
| GLS-282s | 04-08 | MULTI-UNIT HABITATIONAL CONVERSION EXCL |
| GLS-289S | 11-07 | KNOWN INJURY/DAMAGE EXCL-PERS & ADV INJU |
| GLS-304S | 07-08 | CROSS LIABILITY EXCLUSION |
| GLS-30S | 05-05 | CONTRACTORS SPECIAL CONDITIONS |
| GLS-58S | 12-93 | LEAD CONTAMINATION EXCLUSION |
| GLS-74S | 09-05 | AMENDMENT OF CONDITIONS |
| GLS-91S | 01-10 | HIRED AUTO & NONOWNED AUTO LIABILITY |
| UTS-131G | 03-92 | ASBESTOS EXCLUSION |
| UTS-322S | 01-09 | RESIDENTIAL BUILDING PROJECT EXCLUSION |
| UTS-409g | 01-11 | NOTICE OF CANCELLATION – CERT HOLDERS |
| UTS-3G-01 | 03-92 | BROAD NAMED INSURED |

UTS-SP-2L (12-95)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

# SCHEDULE OF LOCATIONS

Policy No. BCS0027068

Effective Date: 03-01-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | ORION AT HERMOSA POINTE<br>10002 NORTH 7TH ST<br>PHOENIX, AZ 85020 | 336 UNITS |
| 002 | 001 | ORION AT ROSWELL VILLAGE<br>100 HEMINWAY LN<br>ROSWELL, GA 30075 | 668 UNITS |
| 003 | 001 | ORION AT OAK HILL<br>2450 OAK HILL CIR<br>FORT WORTH, TX 76109 | 360 UNITS |
| 004 | 001 | 770 LAKE COOK RD, STE 350<br>DEERFIELD, IL 60015 | CORP OFFICE |
| 005 | 001 | CITI ON CAMELBACK<br>909 E CAMELBACK RD<br>PHOENIX, AZ 85014 | 178 UNITS |
| 006 | 001 | LA COSTA AT DOBSON RANCH<br>1820 WEST LINDNER AVE<br>MESA, AZ 85202 | 192 UNITS |
| 007 | 001 | ORION AT GWINNETT POINTE<br>1300 BEAVER RUIN RD<br>NORCROSS, GA 30093 | 382 UNITS |
| 008 | 001 | ORION ST DEERFIELD PARK<br>13085 MORRIS RD<br>ALPHARETTA, GA 30004 | 554 UNITS |
| 009 | 001 | 22525 SE 64TH PL, STE 268<br>ISSAQUAH, WA 98027 | CORP OFFICE |
| 010 | 001 | ORION AT HERITAGE SQUARE<br>65 E OLIVE AVE<br>GILBERT, AZ 85234 | CONTINGENT |
| 011 | 001 | ORION AT MOUNTAIN VIEW<br>509 VALLEY AVENUE NE<br>PUYALLUP, WA 98372 | CONTINGENT |

UTS-SP-3 (8-96)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF LOCATIONS

Policy No. BCS0027068

Effective Date: 03-01-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 012 | 001 | ORION AT MOUNTAIN VIEW<br>14624 72ND ST<br>SUMNER, WA 98390 | CONTINGENT |
| 013 | 001 | ORION AT MOUNTAIN VIEW<br>2309 EAST MAIN AVE<br>PUYALLUP, WA 98372 | CONTINGENT |
| 014 | 001 | VILLAS AT OAK HILL<br>2501 OAK HILL CIR<br>FORT WORTH, TX 76109 | CONTINGENT |
| 015 | 001 | MIDLAND PORTFOLIO<br>VARIOUS<br>MIDLAND, TX 79707 | CONTINGENT |

UTS-SP-3 (8-96)

Home Office Copy

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

Ex. C - p.0013

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

   **1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

   **2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

Ex. C - p.0014

POLICY NUMBER: BCS0027068

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts) $**          3,322 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):** |
| BCS0027068 |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

Home Office Copy

Ex. C - p.0015

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 03-01-12 |
| Policy No. BCS0027068 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

DIRECTOR OF INSURANCE

320 W. WASHINGTON

4TH FLOOR

SPRINGFIELD, IL 62767

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

_____

,_____

_____

_____/_____
AUTHORIZED REPRESENTATIVE            DATE

UTS-9g (5-96)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No.  BCS0027068

Effective Date:  03-01-12
12:01 A.M., Standard Time

Named Insured  ORION RESIDENTIAL ADVISORS

Agent No.  24712

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $        2,000,000 | Products/Completed Operations Aggregate |
| | $        2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $        1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $          100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $        1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ NOT COVERED | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 2.** Form of Business and Location of Premises

Form of business: PROPERTY OWNER/MANAGER

☐ Individual   ☐ Partnership   ☐ Joint Venture   ☐ Trust   ☐ Limited Liability Company

☒ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 65,944.00 |
| Other Premium: | $ | 500.00 |
| Total Premium: | $ | 66,444.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (08/01)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0027068

Effective Date: 03-01-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. 004/001 | Bldg. No. | Class Code 47052 | Exposure $1,162,600. | Basis GROSS SALES/NEAREST THOUSAND | |
|---|---|---|---|---|---|
| Class Description: REAL ESTATE PROPERTY MANAGED **COMPOSITE RATED – ALL OPERATIONS** (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 3.000 | 3,488 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |

| Prem. No. 004/001 | Bldg. No. | Class Code 48925 | Exposure INCLUDED | Basis UNITS/UNITS | |
|---|---|---|---|---|---|
| Class Description: SWIMMING POOLS **COMPOSITE RATED – ALL OPERATIONS** (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |

| Prem. No. 004/001 | Bldg. No. | Class Code 60010 | Exposure 2,672. | Basis UNITS/UNITS | |
|---|---|---|---|---|---|
| Class Description: APARTMENT BUILDINGS **COMPOSITE RATED – ALL OPERATIONS** (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 23.000 | 61,456 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |

| Prem. No. 001/001 | Bldg. No. | Class Code 44444 | Exposure | Basis FLAT CHARGE | |
|---|---|---|---|---|---|
| Class Description: UTS–409G – BLANKET NOC | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | 1,000 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

Home Office Copy

| | ENDORSEMENT NO. _____ |
|---|---|
| ⬩ SCOTTSDALE INSURANCE COMPANY® | |

| Attached to and forming a part of | Endorsement Effective Date  03-01-12 |
|---|---|
| Policy No.  BCS0027068 | 12:01 A.M., Standard Time |
| Named Insured  ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM / MINIMUM EARNED CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

MINIMUM PREMIUM  $     66,444

Item **5. Premium Audit** Condition of **SECTION IV— COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV—LIQUOR LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is replaced by:

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as Advance Premium is a deposit premium only. At the close of each audit period we will compute the Earned Premium for that period and a billing notice of any Audit Premium due will be sent to the first Named Insured. The due date for the Audit Premium is the date shown as the due date on the bill. If the sum of the Advance Premium and Audit Premiums is greater than the Earned Premium, we will return the excess to the first Named Insured, subject to us retaining a Minimum Premium as shown above in the Schedule, including any premium adjustments made by endorsement to this policy during the policy period.

**c.** The first Named Insured must keep records of the information we need for premium computation, and provide us or our representative copies at

such times as we may request. In the event the first Named Insured fails or refuses to allow us or our representative to audit your records, we may unilaterally charge an Audit Premium for the policy period at or up to double the Minimum or Advance Premium, whichever is greater, and such Audit Premium shall be immediately due and payable on notice to the first Named Insured.

**d.** If you request cancellation of this Coverage Part or policy, we will retain not less than twenty-five percent (25%) of the Advance Premium, unless otherwise shown below:

_____  %

For purposes of this endorsement, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

Advance Premium means the premium for this Coverage Part that is stated in the policy declarations and payable in full by the first Named Insured at the inception of the policy.

Audit Premium means the premium for this Coverage Part that is developed by calculating the difference between the Advance Premium and the Earned Premium.

GLS-230s (8-09)

Page 1 of 2

Home Office Copy

Earned Premium means the premium for this Coverage Part that is developed by applying the rate(s) in the policy to the actual premium basis for the audit period.

Minimum Premium means the lowest premium for which this Coverage Part will be written for the policy period.

_____ /_____

AUTHORIZED REPRESENTATIVE                    DATE

Home Office Copy

Ex. C - p.0020

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

Ex. C - p.0022

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © ISO Properties, Inc., 2006 ☐

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

    This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

    "Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

    "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

    "Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006      **CG 00 01 12 07**    ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

    **a. Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    **b. Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c. Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

    **d. Criminal Acts**

    "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **e. Contractual Liability**

    "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    **f. Breach Of Contract**

    "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

    **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

    "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

    **h. Wrong Description Of Prices**

    "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

    However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

    **j. Insureds In Media And Internet Type Businesses**

    "Personal and advertising injury" committed by an insured whose business is:

        **(1)** Advertising, broadcasting, publishing or telecasting;

        **(2)** Designing or determining content of websites for others; or

Ex. C - p.0026

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

Ex. C - p.0027

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

 © ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "occurrence" or offense took place;

  **(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Ex. C - p.0031

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

CG 00 01 12 07     ☐

Ex. C - p.0032

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

  but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

**CG 00 01 12 07**        □

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Ex. C - p.0035

      **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

**CG 00 01 12 07**   □

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

POLICY NUMBER: BCS0027068                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ANY PERSON OR ORGANIZATION WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING IN A CONTRACT OR AGREEMENT, EXECUTED PRIOR TO THE "OCCURRENCE" TO WHICH THIS INSURANCE APPLIES, THAT SUCH PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY

**Designation of Premises:**

PER SCHEDULE OF LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.
2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

Ex. C - p.0039

POLICY NUMBER: BCS0027068

**COMMERCIAL GENERAL LIABILITY**
CG 21 16 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of Professional Services:**

ALL PROFESSIONAL SERVICES OF ANY INSURED

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

☐

**CG 21 16 07 98**          Copyright, Insurance Services Office, Inc., 1997          **Page 1 of 1**

Home Office Copy

Ex. C - p.0040

POLICY NUMBER: BCS0027068

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
|---|
| ALL PREMISES AND CLASSIFICATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** - Coverage **C** - Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** - Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc., 2000
Home Office Copy

Ex. C - p.0041

POLICY NUMBER: BCS0027068            **COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED
# PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Premises:**

PER SCHEDULE OF LOCATIONS

**Project:**

N/A

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

**CG 21 44 07 98**         Copyright, Insurance Services Office, Inc., 1997         **Page 1 of 1** ☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

POLICY NUMBER: **BCS0027068**                                    **COMMERCIAL GENERAL LIABILITY**
                                                                              **CG 21 54 01 96**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

**ALL LOCATIONS AND OPERATIONS FOR WHICH
YOU ARE COVERED UNDER A CONSOLIDATED,
WRAP-UP OR SIMILAR INSURANCE PROGRAM**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**              Copyright, Insurance Services Office, Inc., 1994              **Page 1 of 1** ☐

Home Office Copy

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Ex. C - p.0045

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

Ex. C - p.0046

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

Ex. C - p.0048

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

 **2. Exclusions**

  This insurance does not apply to:

  **Silica Or Silica-Related Dust**

  **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

  **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

  **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

 **2. Exclusions**

  This insurance does not apply to:

  **Silica Or Silica-Related Dust**

  **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

  **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

 **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

 **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

Ex. C - p.0049

POLICY NUMBER: BCS0027068

**COMMERCIAL GENERAL LIABILITY**
**CG 22 64 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PESTICIDE OR HERBICIDE APPLICATOR COVERAGE

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of Operations:**

PROPERTY OWNER

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to the operations shown in the Schedule, Paragraph **(1)(d)** of Exclusion **f.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

**CG 22 64 07 98**        Copyright, Insurance Services Office, Inc., 1997        **Page 1 of 1**  ☐

Ex. C - p.0050

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REAL ESTATE PROPERTY MANAGED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

**CG 22 70 11 85**          Copyright, Insurance Services Office, Inc.,  1984          **Page 1 of 1**          ☐

POLICY NUMBER: BCS0027068           **COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED TO WAIVE RIGHTS OF RECOVERY, PROVIDED SUCH AGREEMENT IS MADE IN WRITING AND PRIOR TO THE LOSS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09        © Insurance Services Office, Inc., 2008        Page 1 of 1    ☐

POLICY NUMBER:  COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 24 26 07 04  © ISO Properties, Inc., 2004  Page 1 of 1  ☐

POLICY NUMBER: BCS0027068

**COMMERCIAL GENERAL LIABILITY**
CG 25 04 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Designated Location(s): |
|---|
| ALL LOCATIONS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

CG 25 04 05 09 © Insurance Services Office, Inc., 2008 Page 1 of 2

Home Office Copy

Ex. C - p.0054

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

   **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

   **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

CG 25 04 05 09 ☐

Home Office Copy

Ex. C - p.0055



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS MADE)**

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | 1,000,000 | each employee | INCL | each employee | INCL |
| | 1,000,000 | aggregate | | | |
| Retroactive Date: | 07/19/2006 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I—Coverages**:

**COVERAGE—EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for "damages" is limited as described in Paragraph **E.** (Section **III**—Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to "damages" only if:

   **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

Ex. C - p.0056

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the "policy period"; and

**(3)** A "claim" for "damages," because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the "policy period" or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

**c.** A "claim" seeking "damages" will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a.** above.

A "claim" received and recorded by the insured within sixty (60) days after the end of the "policy period" will be considered to have been received within the "policy period," if no subsequent policy is available to cover the "claim."

**d.** All "claims" for "damages" made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including "damages" claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Dishonest, Fraudulent, Criminal Or Malicious Act**

"Damages" arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b.** **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury," "property damage" or "personal and advertising injury."

**c.** **Failure To Perform A Contract**

"Damages" arising out of failure of performance of contract by any insurer.

**d.** **Insufficiency Of Funds**

"Damages" arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program."

**e.** **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program."

**f.** **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g.** **ERISA**

"Damages" for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h.** **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

**Ex. C - p.0057**

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

"Damages" arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments—Coverages **A** and **B** are replaced by Supplementary Payments—Coverages **A**, **B** and **Employee Benefits Liability**.

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **4.** of **Section II—Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program."

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period," whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, Paragraph **3.** of **Section II—Who Is An Insured** does not apply.

**E.** For the purposes of the coverage provided by this endorsement, **Section III—Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program."

**b.** The Aggregate Limit is the most we will pay for all "damages" because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program."

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all "damages" sustained by any one "employee," including "damages" sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program."

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Home Office Copy

**Ex. C - p.0058**

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the "policy period" shown in the Declarations of the policy to which this endorsement is attached, unless the "policy period" is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

    **a.** Our obligation to pay "damages" on behalf of the insured applies only to the amount of "damages" in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    **b.** The deductible amount stated in the Schedule applies to all "damages" sustained by any one "employee," including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **c.** The terms of this insurance, including those with respect to:

        **(1)** Our right and duty to defend any "suits" seeking those "damages"; and

        **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the deductible amount.

    **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**F.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV— Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

    **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim." To the extent possible, notice should include:

        **(1)** What the act, error or omission was and when it occurred; and

        **(2)** The names and addresses of anyone who may suffer "damages" as a result of the act, error or omission.

    **b.** If a "claim" is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

**Ex. C - p.0059**

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the "policy period" shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a "policy period" which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision

and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** We will provide a Basic Extended Reporting Period as described in **2.** below, if:

**a.** We cancel or do not renew this endorsement for reasons other than nonpayment of premium; or

**b.** We renew this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to acts, errors or omissions on a claims-made basis.

**2.** The Basic Extended Reporting Period is provided without additional charge. This period starts with the end of the "policy period" and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to "claims" covered under any subsequent insurance you purchase.

**3.** We will offer a Supplemental Extended Reporting Period if you cancel or nonrenew this endorsement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Ex. C - p.0060

You may also purchase a Supplemental Extended Reporting Period if:

**a.** We cancel or do not renew this endorsement for reasons other than nonpayment of premium; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to acts, errors or omissions on a claims-made basis.

You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen. An additional premium charge of twenty-five percent (25%) of the expiring annual premium of this endorsement is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within thirty (30) days of the cancellation or nonrenewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within thirty (30) days of policy termination.

**4.** The Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of insurance, exclusions and conditions, the policy is extended to apply to "claims" first made against the insured during the Basic Extended Reporting Period, if applicable, or the Supplemental Extended Reporting Period, if purchased, but only to "claims" for acts, errors or omissions that occur before the end of the "policy period" (but not before the Retroactive Date shown in the Schedule of this endorsement).

**5.** Extended Reporting Periods do not reinstate or increase the limits of insurance of this endorsement. "Claims" for acts, errors or omissions which

are first received and recorded during the Basic Extended Reporting Period, if applicable, or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the "policy period."

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

**1.** "Administration" means:

**a.** Providing information to "employees," including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit program" means a program providing some or all of the following benefits to "employees," whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

**I.** For the purposes of the coverage provided by this endorsement, Definitions **3.**, **7.** and **21.** in the Definitions Section are replaced by the following:

3. "Claim" means any demand, or "suit," made by an "employee" or an "employee's" dependents and beneficiaries, for "damages" as the result of an act, error or omission.

7. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

21. "Suit" means a civil proceeding in which "damages" because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

_____ / _____

AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002

Ex. C - p.0062

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

Attached to and forming a part of
Policy No. BCS0027068
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-12
12:01 A.M., Standard Time
Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

An "occurrence," or offense originally reported to your workers compensation carrier may later develop into a claim which may be covered by this policy. If you notify us as soon as practicable after you become aware that the "occurrence" or offense may result in a claim against this policy, you will not be deemed in violation of the reporting requirements of this condition.

_____ / _____
AUTHORIZED REPRESENTATIVE                                   DATE

GLS-136s (10-95)

Home Office Copy

Ex. C - p.0063

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY®** | **ENDORSEMENT NO.**_____ |
| Attached to and forming a part of | Endorsement Effective Date 03-01-12 |
| Policy No. BCS0027068 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Knowledge of an "occurrence," offense, claim, or "suit" by the agent, servant or employee of any insured will not in itself constitute knowledge by the Named Insured unless an executive officer of the Named Insured's organization received such notice from its agent, servant or employee.

_____ / _____
AUTHORIZED REPRESENTATIVE        DATE

GLS-137s (10-95)

Home Office Copy

| | ENDORSEMENT NO._____ |
|---|---|

**SCOTTSDALE INSURANCE COMPANY®**

Attached to and forming a part of
Policy No. BCS0027068
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03−01−12
12:01 A.M., Standard Time
Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **6. Representations**, of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Your failure to disclose all hazards, prior ''occurrences'' or offenses existing as of the inception date of the policy will not prejudice the coverage afforded by this policy provided such failure to disclose all hazards, prior ''occurrences'' or offenses is not intentional.

_____  /  _____
AUTHORIZED REPRESENTATIVE                      DATE

GLS-138s (10-95)

Home Office Copy



**SCOTTSDALE INSURANCE COMPANY®**

ENDORSEMENT
NO. _____

Attached to and forming a part of
Policy No.  BCS0027068
Named Insured  ORION RESIDENTIAL ADVISORS

Endorsement Effective Date  03-01-12
12:01 A.M., Standard Time
Agent No.  24712

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT
### (Per Occurrence or Offense)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $    2,500 | per occurrence |
| Property Damage Liability | $    2,500 | per occurrence |
| Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) | $    2,500 | per offense |

APPLICATION OF ENDORSEMENT

Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "property damage," and "personal and advertising injury," ("personal injury" and "advertising injury") however caused:

NO LIMITATION

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability ("Personal Injury" and "Advertising Injury") Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as

applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and all legal and loss adjustment expenses.

3.  The deductible amounts stated in the Schedule above apply:

    a.  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    c.  Under Personal and Advertising Liability ("Personal Injury" and "Advertising Injury") Coverage, to all damages because of "personal injury" or "advertising injury"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,   Insurance Services Office, Inc., 1998

Page 1 of 2

GLS-148s (6-99)

Home Office Copy

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

4. The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply

Irrespective of the application of the deductible amount.

5. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,   Insurance Services Office, Inc., 1998

GLS-148s (6-99)

Home Office Copy

Ex. C - p.0067

 **SCOTTSDALE INSURANCE COMPANY®**

| | |
|---|---|
| | **ENDORSEMENT NO.**_____ |
| Attached to and forming a part of | Endorsement Effective Date  03-01-12 |
| Policy No. BCS0027068 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition **4. Other Insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

  **a. Primary Insurance**

    This insurance is primary except when **b.** below applies.

  **b. Excess Insurance**

  This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

  (1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

  (2)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

  (3)  If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I); or

  (4)  That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____/_____
AUTHORIZED REPRESENTATIVE             DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

GLS -152s (12-96)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "property damage" included in the "products-completed operations hazard" to any structure(s) converted, including all operations necessary on the job site for the conversion, into:

1. A residential townhouse, townhome, or other multi-unit habitational building(s) designed or developed for sale to an individual or multiple owners;

2. Residential condominiums or residential cooperatives; or

3. Multi-use or mixed use projects which include any of the occupancies described in items 1. and 2. above,

regardless if the conversion took place prior to, during or after the policy period.

However, this exclusion shall not apply to any of "your work" performed on such structure(s), including operations necessary on the job site for the conversion, if "your work" was not conducted as part of the conversion operations or related in any way to the conversion operations or included within those conversion operations.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

Ex. C - p.0069

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have

occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

GLS-289s (11-07)                    Page 1 of 1

Ex. C - p.0070

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "bodily injury" or "property damage" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

The following is added to **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "personal and advertising injury" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

AUTHORIZED REPRESENTATIVE      DATE

Ex. C - p.0071

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

The following Condition is added to the policy.

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy; and

2. Coverage equal to or greater than the coverages provided by this policy.

Failure to comply with this condition does not alter the coverage provided by this policy. However, should you fail to comply, a premium charge will be made at the time of audit. At audit, the premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed.

At audit, if the policy does not contain the applicable classification and rate for the work performed, we will multiply our usual and customary rate per $1,000 payroll for that classification by the net modification factor, if any, applied to the policy rates.

For purposes of this endorsement, "total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

_____
AUTHORIZED REPRESENTATIVE        DATE

GLS-30s (5-05)

Page 1 of 1

**Ex. C - p.0072**



**SCOTTSDALE INSURANCE COMPANY®**

| | |
|---|---|
| | **ENDORSEMENT**<br>**NO.**_____ |
| Attached to and forming a part of<br>Policy No. BCS0027068 | Endorsement Effective Date 03-01-12<br>12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement excludes "occurrences" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or from the operations of the insured, which result in:

a. "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b. "Property Damage" arising from any form of lead;

c. "Personal Injury" arising from any form of lead;

d. "Advertising Injury" arising from any form of lead;

e. **Medical Payments** arising from any form of lead;

f. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

g. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ / _____
AUTHORIZED REPRESENTATIVE          DATE

GLS-58s (12-93)

Home Office Copy

Ex. C - p.0073

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS COVERAGE PART**

The Condition entitled **When We Do Not Renew** is deleted in its entirety.

_____          /
AUTHORIZED REPRESENTATIVE                                    DATE

GLS-74s (9-05)                           Page 1 of 1



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

Attached to and forming a part of
Policy No. BCS0027068
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-12
12:01 A.M., Standard Time
Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | $ 500 |
| Nonowned Auto Liability | $ Incl |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.

**A. HIRED AUTO LIABILITY**

The insurance provided under **COVERAGE A— BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**B. NONOWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A— BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the use of any "nonowned auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**C.** With respect to this endorsement, **SECTION I— COVERAGE, COVERAGE A BODILY INJURY AND**

**PROPERTY DAMAGE,** paragraph **2. Exclusions** is amended as follows:

**1.** The following are deleted in their entirety:

    **e. Employer's Liability;**

    **g. Aircraft, Auto or Watercraft;**

    **h. Mobile Equipment;** and

    **j. Damage to Property.**

**2.** The following are added:

This insurance does not apply to:

    **a.** "Bodily injury":

      **(1)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to an "employee" or co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

GLS-91s (1-10)

Page 1 of 2

Home Office Copy

Ex. C - p.0075

to your "volunteer workers" while performing duties related to the conduct of your business.

**(2)** To your spouse, child, parent, brother or sister, or the spouse, child, parent, brother, or sister of the "employee" co-"employee," "volunteer worker," your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company) as a consequence of Paragraph **2.a.(1)** above.

**(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **2.a.(1)** or **2.a.(2)** above.

**(4)** Arising out of the providing or failure to provide professional health care services.

This exclusion applies:

**(a)** Whether the insured may be liable as an employer or in any other capacity; and

**(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**b.** "Property damage" to property:

**(1)** Owned, occupied, used or being transported by; or

**(2)** Rented or loaned to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you or any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), or members (if you are a limited liability company).

**D.** With respect to this endorsement, the following are not Insureds under **SECTION II—WHO IS AN INSURED:**

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-"employee" of such person injured in the course of employment;

**2.** Any partners or members (if you are a partnership or joint venture), members (if you are a limited liability company) or executive officer with respect to any "auto" owned by such partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), executive officer or members of their households;

**3.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

**4.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

**5.** Any person or organization with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**E.** With respect to this endorsement, the following definitions are added to **SECTION V—DEFINITIONS:**

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), or members of their households.

**3.** "Nonowned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. However, if you are a partnership or limited liability company a "nonowned auto" does not include any auto owned by any partner or member.

_____    _____
AUTHORIZED REPRESENTATIVE                                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

Home Office Copy

| | ENDORSEMENT |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY**® | NO._____ |

| Attached to and forming a part of | Endorsement Effective Date  03-01-12 |
|---|---|
| Policy No. BCS0027068 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in construction or manufacturing any good, product or structure; or

3. The removal of asbestos from any good, product or structure; or

4. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

_____ /_____

AUTHORIZED REPRESENTATIVE        DATE

UTS-131g (3-92)

Home Office Copy

Ex. C - p.0077

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No. BCS0027068

Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-12

12:01 A.M., Standard Time

Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RESIDENTIAL BUILDING PROJECT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to damages because of "bodily injury", "property damage", "personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way related to a "residential project".

For those items identified below with an "x" in the corresponding box, this exclusion shall not apply to "your work":

[ ] 1. That consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

[ ] 2. In states other than AZ, CA, CO, LA, NV, TX and WA that consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

[ ] 3. In the following state(s):

[ ] 4. At the following specific project(s) or location(s):

[ ] 5. In states other than AZ, CA, CO, LA, NV, TX and WA that involve the original development or original construction of, and which commences during the policy period on no more than an initial twelve (12) of, any of the following types of individual living units: Single family homes, townhouses, townhomes, residential condominium or cooperative units, duplex units, any type of structural units converted into condominium units, or any other type of domicile unit intended for individual or collective residential ownership.

[ ] 6. That is included within the following Class Code(s), Business Description(s) or designated operations:

[ ] 7. That is not included within the "products-completed operations hazard" definition.

For purposes of this endorsement:

"Residential project" shall mean any building construction project, including structural repair, renovation or remodeling operations, involving one or more single-family homes, townhouses, townhomes, residential condominiums or cooperatives, duplexes, any type of structure converted into condominiums, or any other type of domicile intended for individual or collective residential ownership, and shall include all buildings appurtenant these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use

UTS-322s (1-09)

Page 1 of 2

Home Office Copy

Ex. C - p.0078

buildings which contain both residential units and commercial space, and shall include all buildings appurtenant these structures.

"Residential project" shall not mean apartments unless "your work" involves converting apartments into condominiums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE                    DATE

UTS-322s (1-09)                        Page 2 of 2

Home Office Copy



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No.   BCS0027068

Named Insured   ORION RESIDENTIAL ADVISORS

Endorsement Effective Date   03-01-12
12:01 A.M., Standard Time

Agent No.   24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF CANCELLATION—CERTIFICATE HOLDERS

The following Conditions are added:

1. If this policy is cancelled, we will endeavor to give thirty (30) or ___30___ days written notice of such cancellation to the person(s) or organization(s) as on file with the Agent shown on this policy's Common Policy Declarations for which the designated Agent has issued a Certificate of Insurance pertaining to this policy. Such notice may be provided before or after the effective date of cancellation. The notice will state the effective date of cancellation. However, such notice of cancellation is solely for the purpose of informing the Certificate Holder of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.

2. Failure to give notice in accordance with the terms of this endorsement does not:

   a. Alter the effective date of policy cancellation;

   b. Render such cancellation ineffective;

   c. Grant, alter, or extend any rights or obligations under this policy; or

   d. Extend the insurance beyond the effective date of cancellation.

AUTHORIZED REPRESENTATIVE       DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

UTS-409g (1-11)       Page 1 of 1

Home Office Copy

Ex. C - p.0080



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| BCS0027068 | 03-01-12 | ORION RESIDENTIAL ADVISORS LLC; | 24712 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BROAD NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Orion Residential Advisors LLC and all affiliated, subsidiary, associates or allied companies, including but not limited to corporations, limited liability companies, firms, entities, partnerships, organizations, or joint ventures as now exist, or may hereafter be constituted or acquired, or for which the named insured has the responsibility of placing insurance, and for which similar coverage is not otherwise more specifically provided.

All other terms and conditions remain unchanged.

_____ / _____

AUTHORIZED REPRESENTATIVE                                         DATE

UTS-3g-01  (3-92)



## CHANGE ENDORSEMENT NO. 001

| | | |
|---|---|---|
| Policy No. | BCS0027068 | Effective Date: 07-18-12 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No.   24712 |

---

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by ☒ below.**

|   | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $      -2,534.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

---

### CHANGE DESCRIPTION

IN CONSIDERATION OF A RETURN PREMIUM OF $2,534.00, IT IS AGREED THAT
THE SCHEDULE OF LOCATIONS AND THE EXTENSION OF SUPPLEMENTAL
DECLARATIONS ARE AMENDED, PER ATTACHED.

IT IS FURTHER AGREED THAT

THE NAMED INSURED HAS BEEN AMENDED TO EXCLUDE:

CITI ON CAMELBACK

ORION CAMELBACK, LLC

---

### PREMIUM CHANGE

| | |
|---|---|
| Additional $ | Return $     -2,534.00 |

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. C - p.0082

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0027068

Effective Date: 07-18-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| *** 005 | *** 001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED: CITI ON CAMELBACK 909 E CAMELBACK RD PHOENIX, AZ 85014 | 178 UNITS |

UTS-3L (8-86)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0027068

Effective Date: 07-18-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

---

**CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.**

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/Operations | |
|---|---|---|---|
| Premises 004/001 | Exposure 2,494 | Rate 23.000 | ADJ. ANNUAL Premium -2,534.00 |
| Classification: APARTMENT BUILDINGS **COMPOSITE RATED - ALL OPERATIONS** (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

Ex. C - p.0084



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 002

| Policy No. | BCS0027068 | Effective Date: 09-04-12 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

| | | |
|---|---|---|
| [ ] | Commercial Property | |
| [X] | Commercial General Liability | $         -2,155.00 |
| [ ] | Commercial Crime | |
| [ ] | Commercial Inland Marine | |
| [ ] | | |
| [ ] | | |

### CHANGE DESCRIPTION

IN CONSIDERATION OF A RETURN PREMIUM OF $2,155.00, IT IS AGREED THAT
THE SCHEDULE OF LOCATIONS AND THE EXTENSION OF SUPPLEMENTAL
DECLARATIONS ARE AMENDED, PER ATTACHED.

IT IS FURTHER AGREED THAT

THE NAMED INSURED HAS BEEN AMENDED TO EXCLUDE:

LA COSTA AT DOBSON RANCH

### PREMIUM CHANGE

| Additional $ | Return $         -2,155.00 |
|---|---|

_____
AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. C - p.0085

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0027068

Effective Date: 09-04-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| *** 006 | *** 001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED: LA COSTA AT DOBSON RANCH 1820 WEST LINDNER AVE MESA, AZ 85202 | 192 UNITS |

UTS-3L (8-86)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0027068

Effective Date: 09-04-12
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

---

**CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.**

**THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:**

| Code No. 60010 | Premium Basis UNITS | Premises/Operations | |
|---|---|---|---|
| Premises 004/001 | Exposure 2,302 | Rate 23.000 | ADJ. ANNUAL Premium -2,155.00 |
| Classification: APARTMENT BUILDINGS **COMPOSITE RATED – ALL OPERATIONS** (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

Ex. C - p.0087

# EXHIBIT D



**Nationwide**

# Certification

I, <u>Ebone M Lewis</u>, as a duly authorized <u>Scottsdale Insurance Company</u> associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of <u>BCS0029735, 03-01-2013 to 03-01-2014</u> was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.


_____      <u>July 30, 2021</u>
Signature                                                    Date
<u>EBONE M LEWIS</u>
Print Name
<u>CL Lead Processor</u>
Title

# ADDENDUM

**Some internal notes, stamps or typing on the Declaration sheet may appear.  The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, inspection fees or taxes, or additional instructional stamps may have appeared on the policy received by the insured but may not appear on this copy.**



**National Casualty Company**

Scottsdale Indemnity Company

SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

## CLAIM REPORTING
## INFORMATION

Your insurance policy has been placed with the Scottsdale Insurance Group, a subsidiary of the Nationwide Insurance Company. The Scottsdale Insurance Group is a reliable, service-oriented group of companies that will help protect you against certain losses.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact the Scottsdale Insurance Group 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our Web site at www.scottsdaleins.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
| --- |
| Call **1-800-423-7675** or visit our Web site at **www.scottsdaleins.com** |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible:<br><br>• Your policy number<br><br>• Date, time and location of the loss/accident<br><br>• Details of the loss/accident<br><br>• Name, address and phone number of any involved parties<br><br>• If applicable, name of law enforcement agency or fire department along with the incident number<br><br>**Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (2-06)

SCOTTSDALE INSURANCE COMPANY®
Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                      President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (12-09)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08     □

Ex. D - p.0007

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2011

Ex. D - p.0008

## COMMON POLICY DECLARATIONS

| | | |
|---|---|---|
| BCS0027068 |  SCOTTSDALE INSURANCE COMPANY® | **Policy Number** |
| Renewal of Number | | BCS0029735 |

Home Office:
One Nationwide Plaza o Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive o Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**ITEM 1.** Named Insured and Mailing Address

ORION RESIDENTIAL ADVISORS LLC;
(SEE SCHEDULE OF NAMED INSUREDS)
770 LAKE COOK RD, STE 350
DEERFIELD IL 60015

Agent Name and Address

WESTROPE & ASSOCIATES
1100 WALNUT ST STE 3200
KANSAS CITY MO 64106

Agent No.: 24712

Program No.: NONE

| **ITEM 2.** Policy Period | From: 03-01-2013 | To: 03-01-2014 | Term: 1 Year |
|---|---|---|---|

12:01 A.M., Standard Time at the mailing address shown in ITEM 1.

Business Description: PROPERTY OWNER/MANAGER

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium Summary |
|---|---|---|
| Commercial General Liability Coverage Part | $ | 64,832.00 |
| Commercial Property Coverage Part | $ | NOT COVERED |
| Commercial Crime And Fidelity Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |
| SIC Terrorism | $ | 3,242.00 |
| **Total Policy Premium** | $ | 68,074.00 |
| | $ | |
| | $ | |
| **Policy Total** | $ | **68,074.00** |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENT(S), IF ANY,
COMPLETE THE ABOVE-NUMBERED POLICY.

OPS-D-1 (8-10)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

ORION RESIDENTIAL ADVISORS LLC;

ORION RESIDENTIAL MANAGEMENT LLC;

ORION RESIDENTIAL MANAGEMENT –
TEXAS LLC;

ORION RESIDENTIAL MANAGEMENT –
ARIZONA LLC;

ORION RESIDENTIAL MANAGEMENT –
KANSAS LLC;

ORION RESIDENTIAL MANAGEMENT –
WASHINGTON LLC;

ORION RESIDENTIAL MANAGEMENT –
GEORGIA LLC;

ORION INVESTMENT ADVISORS LLC;

ORION-POSADA VALLARTA ASSOCIATE,
LLC
ORION AT HERMOSA POINTE;

ORION-DUNLEAF ASSOCIATES, LLC
ORION AT GWINNETT POINTE;

ORION-ROSWELL ASSOCIATES LLC
ORION AT ROSWELL VILLAGE;

ORION-MILTON ASSOCIATES LLC
ORION AT DEERFIELD PARK;

ORION-FORT WORTH ASSOCIATES LLC
ORION AT OAK HILL;

STARWOOD GLOBAL OPPORTUNITY FUND VI
– A, L.P.;

STARWOOD GLOBAL OPPORTUNITY FUND VI
– B, L.P.;

SOF – VI U.S. HOLDING, II, L.L.C.;

VI PHOENIX FUNDING, L.L.C.;

GEBAM, INC.;

GEBAM, LLC;

STRATEGIC CAPITAL PARTNERS, LLC;

UTS-SP-1 (8-96)

Home Office Copy

**Ex. D - p.0010**

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. BCS0029735                                          Effective Date: 03-01-13
                                                                           12:01 A.M., Standard Time
Named Insured ORION RESIDENTIAL ADVISORS                Agent No. 24712

---

BLUEROCK REAL ESTATE LLC;

GIBRALT WESTCLAY PARTICIPATE, LLC;

ORION/ROBSON CAMELBACK, LLC;

SKR HOLDINGS LLC;

ORION/ROBSON PACIFIC NOTE
INVESTORS, LLC

UTS-SP-1 (8-96)



## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

**COMMON POLICY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| NOTX0178CW | 02-06 | CLAIM REPORTING INFORMATION |
| UTS-COVPG | 12-09 | COVER PAGE |
| OPS-D-1 | 08-10 | COMMON POLICY DECLARATIONS |
| UTS-SP-1 | 08-96 | SCHEDULE OF NAMED INSUREDS |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 47 | 09-11 | ILLINOIS CHANGES - CIVIL UNION |
| IL 09 85 | 01-08 | DISCLOSURE PURSUANT/TERROR RISK INS ACT |
| UTS-74G | 08-95 | PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION |
| UTS-9G | 05-96 | SERVICE OF SUIT CLAUSE |

**GENERAL LIABILITY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL LIABILITY COVERAGE PART DEC |
| CLS-SP-1L | 10-93 | GENERAL LIABILITY COVERAGE PART-EXT. |
| GLS-230S | 08-09 | MIN & ADV PREM\MIN EARNED CANC ENDT |
| CG 00 01 | 12-07 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 00 68 | 05-09 | RECRDG AND DISTRB OF MATRL OR INFO EXCL |
| CG 04 35 | 12-07 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| CG 20 18 | 11-85 | ADDL INSD-MORTGAGEE ASSIGNEE OR RECEIVER |
| CG 20 33 | 07-04 | ADDL INS - OWNERS, LESSEES OR CONTR'S |
| CG 21 16 | 07-98 | EXCL-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 35 | 10-01 | EXCL-COV C-MEDICAL PAYMENTS |
| CG 21 44 | 07-98 | LIMIT OF COV TO DESIGNATED PREM OR PROJ |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 54 | 01-96 | EXCL - DESIGNATED OPERATIONS |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 70 | 01-08 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |
| CG 21 96 | 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 64 | 07-98 | PESTICIDE OR HERBICIDE APPLICATION COV |
| CG 22 70 | 11-85 | REAL ESTATE PROPERTY MANAGED |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 24 26 | 07-04 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 25 04 | 05-09 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| GLS-136S | 10-95 | NOTICE OF OCCURRENCE |
| GLS-137S | 10-95 | KNOWLEDGE OF OCCURRENCE |
| GLS-138S | 10-95 | UNINTENTIONAL FAILURE TO DISCLSE HAZARDS |
| GLS-148S | 06-99 | LIABILITY DEDUCTIBLE (PER OCC/OFF) |
| GLS-152S | 12-96 | AMENDMENT TO OTHER INS CONDITION |
| GLS-281s | 09-07 | CONTINUING OR ONGOING DAMAGE EXCLUSION |
| GLS-282s | 04-08 | MULTI-UNIT HABITATIONAL CONVERSION EXCL |
| GLS-289S | 11-07 | KNOWN INJURY/DAMAGE EXCL-PERS & ADV INJU |
| GLS-304S | 07-08 | CROSS LIABILITY EXCLUSION |
| GLS-30S | 05-05 | CONTRACTORS SPECIAL CONDITIONS |
| GLS-58S | 12-93 | LEAD CONTAMINATION EXCLUSION |
| GLS-74S | 09-05 | AMENDMENT OF CONDITIONS |
| GLS-91S | 01-10 | HIRED AUTO & NONOWNED AUTO LIABILITY |
| UTS-131G | 03-92 | ASBESTOS EXCLUSION |
| UTS-322S | 01-09 | RESIDENTIAL BUILDING PROJECT EXCLUSION |
| UTS-409g | 01-11 | NOTICE OF CANCELLATION - CERT HOLDERS |

UTS-SP-2L (12-95)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. BCS0029735

Named Insured ORION RESIDENTIAL ADVISORS

Effective Date: 03-01-13
12:01 A.M., Standard Time

Agent No. 24712

**UTS-3G-01          03-92      BROAD NAMED INSURED**

UTS-SP-2L (12-95)                              Home Office Copy

Ex. D - p.0013

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF LOCATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | ORION AT HERMOSA POINTE<br>10002 NORTH 7TH ST<br>PHOENIX, AZ 85020 | 336 UNITS |
| 002 | 001 | ORION AT ROSWELL VILLAGE<br>100 HEMINGWAY LN<br>ROSWELL, GA 30075 | 668 UNITS |
| 003 | 001 | ORION AT OAK HILL<br>2450 OAK HILL CIR<br>FORT WORTH, TX 76109 | 360 UNITS |
| 004 | 001 | 770 LAKE COOK RD, STE 350<br>DEERFIELD, IL 60015 | CORP OFFICE |
| 005 | 001 | ORION AT GWINNETT POINTE<br>1300 BEAVER RUIN RD<br>NORCROSS, GA 30093 | 382 UNITS |
| 006 | 001 | ORION ST DEERFIELD PARK<br>13085 MORRIS RD<br>ALPHARETTA, GA 30004 | 554 UNITS |
| 007 | 001 | 22525 SE 64TH PL, STE 268<br>ISSAQUAH, WA 98027 | CORP OFFICE |
| 008 | 001 | CITI ON CAMELBACK<br>909 EAST CAMELBACK RD<br>PHOENIX, AZ 85016 | CONTINGENT |
| 009 | 001 | ORION AT MOUNTAIN VIEW<br>509 VALLEY AVENUE NE<br>PUYALLUP, WA 98372 | CONTINGENT |
| 010 | 001 | ORION AT MOUNTAIN VIEW<br>14624 72ND ST<br>SUMNER, WA 98390 | CONTINGENT |
| 011 | 001 | ORION AT MOUNTAIN VIEW<br>2309 EAST MAIN AVE<br>PUYALLUP, WA 98372 | CONTINGENT |

UTS-SP-3 (8-96)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY®**

# SCHEDULE OF LOCATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 012 | 001 | VILLAS AT OAK HILL 2501 OAK HILL CIRLE FORT WORTH, TX 76109 | CONTINGENT |
| 013 | 001 | MIDLAND PORTFOLIO VARIOUS MIDLAND, TX 79707 | CONTINGENT |
| 014 | 001 | CONIFER PORTFOLIO 1111 W 13TH ST ODESSA, TX 79763 | CONTINGENT |
| 015 | 001 | CONIFER PORTFOLIO 14624 72ND ST ODESSA, TX 79762 | CONTINGENT |
| 016 | 001 | CONIFER PORTFOLIO 2309 EAST MAIN AVE ODESSA, TX 79762 | CONTINGENT |
| 017 | 001 | MORNINGSIDE SOUTH 171 OAK ST CHICAGO, IL 60610 | CONTINGENT |

POLICY NUMBER: BCS0029735

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts) $**     3,242 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**<br>BCS0029735 |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Home Office Copy

Ex. D - p.0016

<table>
<tr><td colspan="2"></td><td><strong>ENDORSEMENT</strong><br><strong>NO.</strong>_____</td></tr>
</table>

SCOTTSDALE INSURANCE COMPANY®

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 03-01-13 |
| Policy No. BCS0029735 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____ / _____
AUTHORIZED REPRESENTATIVE                                          DATE

UTS-74g (8-95)

Home Office Copy

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 03-01-13 |
| Policy No. BCS0029735 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

DIRECTOR OF INSURANCE

320 W. WASHINGTON

4TH FLOOR

SPRINGFIELD, IL 62767

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

_____

,_____

_____

_____  /  _____
AUTHORIZED REPRESENTATIVE        DATE

UTS-9g (5-96)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured  ORION RESIDENTIAL ADVISORS

Agent No. 24712

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ 2,000,000 | Products/Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ NOT COVERED | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 2.** Form of Business and Location of Premises

Form of business: PROPERTY OWNER/MANAGER

[ ] Individual    [ ] Partnership    [ ] Joint Venture    [ ] Trust    [X] Limited Liability Company

[ ] Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 64,332.00 |
| Other Premium: | $ | 500.00 |
| Total Premium: | $ | 64,832.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (08/01)

Home Office Copy

Ex. D - p.0019

\

 **SCOTTSDALE INSURANCE COMPANY®**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 001/001 | | 47052 | $89,325. | GROSS SALES/NEAREST THOUSAND |

| Class Description: | Premises/Operations | |
|---|---|---|
| REAL ESTATE PROPERTY MANAGED (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 2.821 | 252 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 001/001 | | 60010 | 336. | UNITS/EACH |

| Class Description: | Premises/Operations | |
|---|---|---|
| APARTMENT BUILDINGS (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 23.642 | 7,944 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 002/001 | | 60010 | 1,604. | UNITS/EACH |

| Class Description: | Premises/Operations | |
|---|---|---|
| APARTMENT BUILDINGS (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 29.155 | 46,765 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 003/001 | | 47052 | $1,288,867. | GROSS SALES/NEAREST THOUSAND |

| Class Description: | Premises/Operations | |
|---|---|---|
| REAL ESTATE PROPERTY MANAGED (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 2.783 | 3,587 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

CLS-SP-1L (10-93)

Home Office Copy

**Ex. D - p.0020**

\



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. Bldg. No. 003/001 | Class Code 60010 | Exposure 360. | Basis UNITS/EACH | |
|---|---|---|---|---|
| **Class Description:** APARTMENT BUILDINGS (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | 11.749 | 4,230 |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | INCLUDED | INCLUDED |

| Prem. No. Bldg. No. 004/001 | Class Code 47052 | Exposure $69,000. | Basis GROSS SALES/NEAREST THOUSAND | |
|---|---|---|---|---|
| **Class Description:** REAL ESTATE PROPERTY MANAGED (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | 3.057 | 211 |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | INCLUDED | INCLUDED |

| Prem. No. Bldg. No. 007/001 | Class Code 47052 | Exposure $110,693. | Basis GROSS SALES/NEAREST THOUSAND | |
|---|---|---|---|---|
| **Class Description:** REAL ESTATE PROPERTY MANAGED (PRODUCTS–COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | 3.097 | 343 |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | INCLUDED | INCLUDED |

| Prem. No. Bldg. No. | Class Code 44444 | Exposure N/A | Basis INCL | |
|---|---|---|---|---|
| **Class Description:** PESTICIDE/HERBICIDE COVERAGE | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | INCLUDED | INCLUDED |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | INCLUDED | INCLUDED |

CLS-SP-1L (10-93)

Home Office Copy

\



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Class Code 44444 | Exposure N/A | Basis INCL | |
|---|---|---|---|---|---|
| **Class Description:** | | | | **Premises/Operations** | |
| WAIVER OF SUBROGATION | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| | | | | **Products/Comp Operations** | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| Prem. No. | Bldg. No. | Class Code 44444 | Exposure N/A | Basis INCL | |
| **Class Description:** | | | | **Premises/Operations** | |
| PER LOCATION AGGREGATE | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| | | | | **Products/Comp Operations** | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code 99999 | Exposure | Basis FLAT CHARGE | |
| **Class Description:** | | | | **Premises/Operations** | |
| UTS-409G – NOTICE OF CANCEL–CERT HOLDERS | | | | Rate | Premium |
| | | | | FLAT CHARGE | 1,000 |
| | | | | **Products/Comp Operations** | |
| | | | | Rate | Premium |
| | | | | INCLUDED | INCLUDED |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| **Class Description:** | | | | **Premises/Operations** | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | **Products/Comp Operations** | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

Home Office Copy



**SCOTTSDALE INSURANCE COMPANY®**

ENDORSEMENT
NO. _____

Attached to and forming a part of
Policy No.  BCS0029735
Named Insured  ORION RESIDENTIAL ADVISORS

Endorsement Effective Date  03-01-13
12:01 A.M., Standard Time
Agent No.  24712

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM/MINIMUM EARNED CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

MINIMUM PREMIUM  $   64,832

Item **5. Premium Audit** Condition of **SECTION IV— COMMERCIAL GENERAL LIABILITY CONDITIONS, SEC- TION IV—LIQUOR LIABILITY CONDITIONS** and **SEC- TION IV—PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is replaced by **:**

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as Advance Premium is a deposit premium only. At the close of each audit period we will compute the Earned Premium for that period and a billing notice of any Audit Premium due will be sent to the first Named Insured. The due date for the Audit Premium is the date shown as the due date on the bill. If the sum of the Advance Premium and Audit Premiums is greater than the Earned Premium, we will return the excess to the first Named Insured, subject to us retaining a Minimum Premium as shown above in the Schedule, including any premium adjust- ments made by endorsement to this policy during the policy period.

**c.** The first Named Insured must keep records of the information we need for premium computation, and provide us or our representative copies at

such times as we may request. In the event the first Named Insured fails or refuses to allow us or our representative to audit your records, we may unilaterally charge an Audit Premium for the policy period at or up to double the Minimum or Ad- vance Premium, whichever is greater, and such Audit Premium shall be immediately due and pay- able on notice to the first Named Insured.

**d.** If you request cancellation of this Coverage Part or policy, we will retain not less than twenty-five percent (25%) of the Advance Premium, unless otherwise shown below:

_____ %

For purposes of this endorsement, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

Advance Premium means the premium for this Cover- age Part that is stated in the policy declarations and payable in full by the first Named Insured at the incep- tion of the policy.

Audit Premium means the premium for this Cover- age Part that is developed by calculating the difference be- tween the Advance Premium and the Earned Pre- mium.

GLS-230s (8-09)

Page 1 of 2

Home Office Copy

Ex. D - p.0023

Earned Premium means the premium for this Coverage Part that is developed by applying the rate(s) in the policy to the actual premium basis for the audit period.

Minimum Premium means the lowest premium for which this Coverage Part will be written for the policy period.

_____ / _____

AUTHORIZED REPRESENTATIVE                    DATE

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © ISO Properties, Inc., 2006 □

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006 **CG 00 01 12 07** ☐

**Ex. D - p.0028**

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2006 ☐

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

   **(1)** Advertising, broadcasting, publishing or telecasting;

   **(2)** Designing or determining content of websites for others; or

 © ISO Properties, Inc., 2006 CG 00 01 12 07   □

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

CG 00 01 12 07 ☐

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

 © ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006

**CG 00 01 12 07**     □

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

 © ISO Properties, Inc., 2006

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

CG 00 01 12 07 ◻

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

CG 00 01 12 07     ☐

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Ex. D - p.0039

      **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

**CG 00 01 12 07**    ☐

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2008 □

Ex. D - p.0041

POLICY NUMBER: BCS0029735

COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ NIL | $ INCLUDED |
| | $ 1,000,000 | aggregate | | |
| Retroactive Date: | 07/19/06 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to damages only if:

    **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

    **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

  **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

© ISO Properties, Inc., 2006

Home Office Copy

(2) When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II — Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

© ISO Properties, Inc., 2006

CG 04 35 12 07 □

Home Office Copy

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III — Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

CG 04 35 12 07 © ISO Properties, Inc., 2006 Page 3 of 7

Home Office Copy

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

   **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

   apply irrespective of the application of the deductible amount.

   **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV — Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

      © ISO Properties, Inc., 2006       CG 04 35 12 07   ☐

Home Office Copy

    (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

    This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

    (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

        (a) No Retroactive Date is shown in the Schedule of this insurance; or

        (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

    (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

    (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

Home Office Copy

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   **a.** This endorsement is canceled or not renewed; or

   **b.** We renew or replace this endorsement with insurance that:

      **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      **(2)** Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   **a.** The "employee benefit programs" insured;

   **b.** Previous types and amounts of insurance;

   **c.** Limits of insurance available under this endorsement for future payment of damages; and

   **d.** Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

Home Office Copy

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

POLICY NUMBER: BCS0029735                             **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
ANY PERSON OR ORGANIZATION WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING IN A CONTRACT OR AGREEMENT, EXECUTED PRIOR TO THE "OCCURRENCE" TO WHICH THIS INSURANCE APPLIES, THAT SUCH PERSON OR ORGANIZATION BE ADDED AS AN ADDITIONAL INSURED ON YOUR POLICY

**Designation of Premises:**
PER SCHEDULE OF LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**Ex. D - p.0049**

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 33 07 04 © ISO Properties, Inc., 2004 Page 1 of 1 □

POLICY NUMBER: BCS0029735

COMMERCIAL GENERAL LIABILITY
CG 21 16 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of  Professional Services:**

ALL PROFESSIONAL SERVICES OF ANY INSURED

(If no entry appears above, information  required to complete this endorsement will be shown in the Declarations as applicable  to  this  endorsement.)

With  respect to any  professional services shown  in the Schedule, the following  exclusion  is added  to Paragraph  **2., Exclusions**  of  **Section  I - Coverage  A - Bodily  Injury  And Property  Damage  Liability**  and Paragraph  2., **Exclusions**  of  **Section I - Coverage  B - Personal  And  Advertising  Injury  Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising  injury" due to the rendering of or failure to render any  professional  service.

CG 21 16 07 98                        Copyright, Insurance Services Office, Inc., 1997                        **Page 1 of 1**

Home Office Copy

POLICY NUMBER: BCS0029735

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION -  COVERAGE C -  MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
|---|
| ALL PREMISES AND CLASSIFICATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** - Coverage **C** - Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** - Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc.,  2000
Home Office Copy

Ex. D - p.0052

POLICY NUMBER: BCS0029735

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED
# PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Premises:**

PER SCHEDULE OF LOCATIONS

**Project:**

N/A

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

  1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

  2.  The project shown in the Schedule.

**CG 21 44 07 98**       Copyright, Insurance Services Office, Inc., 1997       **Page 1 of 1** ☐

Home Office Copy

Ex. D - p.0053

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 ☐

Ex. D - p.0054

POLICY NUMBER: **BCS0029735**                                    **COMMERCIAL GENERAL LIABILITY**
                                                                   **CG 21 54 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

```
ALL LOCATIONS AND OPERATIONS FOR WHICH
YOU ARE COVERED UNDER A CONSOLIDATED,
WRAP-UP OR SIMILAR INSURANCE PROGRAM
```

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1** ☐

Home Office Copy

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

Ex. D - p.0057

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

Ex. D - p.0059

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004 ☐

Ex. D - p.0060

POLICY NUMBER: BCS0029735

COMMERCIAL GENERAL LIABILITY
CG 22 64 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PESTICIDE OR HERBICIDE APPLICATOR COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description Of Operations:**

PROPERTY OWNER/MANAGER

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to the operations shown in the Schedule, Paragraph **(1)(d)** of Exclusion **f.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

**CG 22 64 07 98**                     Copyright, Insurance Services Office, Inc., 1997                     **Page 1 of 1** ☐

Ex. D - p.0061

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REAL ESTATE PROPERTY MANAGED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

**CG 22 70 11 85**          Copyright, Insurance Services Office, Inc.,  1984          **Page 1 of 1**          ☐

POLICY NUMBER: BCS0029735

**COMMERCIAL GENERAL LIABILITY**
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED TO WAIVE RIGHTS OF RECOVERY, PROVIDED SUCH AGREEMENT IS MADE IN WRITING AND PRIOR TO THE LOSS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09 © Insurance Services Office, Inc., 2008 Page 1 of 1 □

Home Office Copy

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 26 07 04**

© ISO Properties, Inc., 2004

**Page 1 of 1**  ☐

Ex. D - p.0064

POLICY NUMBER: BCS0029735

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Designated Location(s):** |
| ALL LOCATIONS |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage **A,** and for all medical expenses caused by accidents under Section I – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

    **1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

    **2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

        **a.** Insureds;

        **b.** Claims made or "suits" brought; or

        **c.** Persons or organizations making claims or bringing "suits".

    **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

    **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**CG 25 04 05 09**

© Insurance Services Office, Inc., 2008

Page 1 of 2     ☐

Ex. D - p.0065

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** — Coverage **A,** and for all medical expenses caused by accidents under Section **I** — Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

  "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** — Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.



## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT**

**NO.**_____

Attached to and forming a part of      Endorsement Effective Date 03-01-13
Policy No. BCS0029735      12:01 A.M., Standard Time
Named Insured ORION RESIDENTIAL ADVISORS      Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of
SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

An "occurrence," or offense originally reported to your workers compensation carrier may later develop into
a claim which may be covered by this policy. If you notify us as soon as practicable after you become aware
that the "occurrence" or offense may result in a claim against this policy, you will not be deemed in violation
of the reporting requirements of this condition.

_____ / _____
         AUTHORIZED REPRESENTATIVE          DATE

GLS-136s (10-95)

Home Office Copy

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 03-01-13 |
| Policy No. BCS0029735 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Duties in the Event of Occurrence, Offense, Claim or Suit** of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Knowledge of an "occurrence," offense, claim, or "suit" by the agent, servant or employee of any insured will not in itself constitute knowledge by the Named Insured unless an executive officer of the Named Insured's organization received such notice from its agent, servant or employee.

_____ / _____
AUTHORIZED REPRESENTATIVE        DATE

GLS-137s (10-95)

Home Office Copy

| SCOTTSDALE INSURANCE COMPANY® | ENDORSEMENT NO. _____ |
|---|---|

Attached to and forming a part of
Policy No. BCS0029735
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date  03-01-13
12:01 A.M., Standard Time
Agent No.  24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **6. Representations**, of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Your failure to disclose all hazards, prior "occurrences" or offenses existing as of the inception date of the policy will not prejudice the coverage afforded by this policy provided such failure to disclose all hazards, prior "occurrences" or offenses is not intentional.

_____  /  _____
                    AUTHORIZED REPRESENTATIVE                              DATE

GLS-138s (10-95)

Home Office Copy

 **SCOTTSDALE INSURANCE COMPANY**®

| | |
|---|---|
| | **ENDORSEMENT NO.** _____ |

Attached to and forming a part of

Policy No. BCS0029735

Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-13
12:01 A.M., Standard Time

Agent No. 24712

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT
### (Per Occurrence or Offense)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $   2,500 | per occurrence |
| Property Damage Liability | $   2,500 | per occurrence |
| Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) | $   2,500 | per offense |

APPLICATION OF ENDORSEMENT

Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "property damage," and "personal and advertising injury," ("personal injury" and "advertising injury") however caused:

NO LIMITATION

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability ("Personal Injury" and "Advertising Injury") Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as

applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and all legal and loss adjustment expenses.

3.  The deductible amounts stated in the Schedule above apply:

    a.  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    c.  Under Personal and Advertising Liability ("Personal Injury" and "Advertising Injury") Coverage, to all damages because of "personal injury" or "advertising injury"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,  Insurance Services Office, Inc., 1998

Page 1 of 2

GLS-148s (6-99)

Home Office Copy

Ex. D - p.0070

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

4. The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply

Irrespective of the application of the deductible amount.

5. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright,  Insurance Services Office, Inc., 1998

Page 2 of 2

GLS-148s (6-99)

Home Office Copy



| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY®** | **ENDORSEMENT**<br>**NO.**_____ |

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date `03-01-13` |
| Policy No. `BCS0029735` | 12:01 A.M., Standard Time |
| Named Insured `ORION RESIDENTIAL ADVISORS` | Agent No. `24712` |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition **4. Other Insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

  **a. Primary Insurance**

    This insurance is primary except when **b.** below applies.

  **b. Excess Insurance**

    This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

    (1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (2)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (3)  If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I); or

    (4)  That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____ /  _____
AUTHORIZED REPRESENTATIVE           DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

GLS -152s (12-96)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTINUING OR ONGOING DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE
FORM—COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR**

The following exclusion is added to subsection **2. Exclusions** of **SECTION I—COVERAGE:**

This insurance does not apply to "property damage" when any of the following apply:

**Continuing Or Ongoing Damage**

1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

_____    /
AUTHORIZED REPRESENTATIVE                         DATE

GLS-281s (9-07)                          Page 1 of 1

Ex. D - p.0073

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "property damage" included in the "products-completed operations hazard" to any structure(s) converted, including all operations necessary on the job site for the conversion, into:

1. A residential townhouse, townhome, or other multi-unit habitational building(s) designed or developed for sale to an individual or multiple owners;

2. Residential condominiums or residential cooperatives; or

3. Multi-use or mixed use projects which include any of the occupancies described in items 1. and 2. above,

regardless if the conversion took place prior to, during or after the policy period.

However, this exclusion shall not apply to any of "your work" performed on such structure(s), including operations necessary on the job site for the conversion, if "your work" was not conducted as part of the conversion operations or related in any way to the conversion operations or included within those conversion operations.

AUTHORIZED REPRESENTATIVE        DATE

Ex. D - p.0074

| SCOTTSDALE INSURANCE COMPANY® | | ENDORSEMENT NO. _____ |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have

occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____ / _____
AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

GLS-289s (11-07)          Page 1 of 1

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "bodily injury" or "property damage" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

The following is added to **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

This insurance does not apply to "personal and advertising injury" arising out of any claim or "suit" brought by any Named Insured against another Named Insured.

---

AUTHORIZED REPRESENTATIVE                    DATE

GLS-304s (7-08)                    Page 1 of 1

Ex. D - p.0076

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

The following Condition is added to the policy.

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy; and

2. Coverage equal to or greater than the coverages provided by this policy.

Failure to comply with this condition does not alter the coverage provided by this policy. However, should you fail to comply, a premium charge will be made at the time of audit. At audit, the premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed.

At audit, if the policy does not contain the applicable classification and rate for the work performed, we will multiply our usual and customary rate per $1,000 payroll for that classification by the net modification factor, if any, applied to the policy rates.

For purposes of this endorsement, "total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

_____  /  _____
AUTHORIZED REPRESENTATIVE                           DATE

Ex. D - p.0077

 **SCOTTSDALE INSURANCE COMPANY®**

| | |
|---|---|
| | **ENDORSEMENT NO.**_____ |
| Attached to and forming a part of | Endorsement Effective Date 03-01-13 |
| Policy No. BCS0029735 | 12:01 A.M., Standard Time |
| Named Insured ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement excludes ''occurrences'' at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or from the operations of the insured, which result in:

a. ''Bodily Injury'' arising out of the ingestion, inhalation or absorption of lead in any form;

b. ''Property Damage'' arising from any form of lead;

c. ''Personal Injury'' arising from any form of lead;

d. ''Advertising Injury'' arising from any form of lead;

e. **Medical Payments** arising from any form of lead;

f. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

g. Any loss, cost or expense arising out of any claim or ''suit'' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ / _____
AUTHORIZED REPRESENTATIVE                DATE

GLS-58s (12-93)

Home Office Copy

**Ex. D - p.0078**

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS COVERAGE PART**

The Condition entitled **When We Do Not Renew** is deleted in its entirety.

_____
AUTHORIZED REPRESENTATIVE                    DATE

GLS-74s (9-05)                    Page 1 of 1



**SCOTTSDALE INSURANCE COMPANY**®

| | |
|---|---|
| **ENDORSEMENT NO.** _____ | |

Attached to and forming a part of
Policy No. BCS0029735
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-13
12:01 A.M., Standard Time
Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | $          500 |
| Nonowned Auto Liability | $          Incl |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.

**A. HIRED AUTO LIABILITY**

The insurance provided under **COVERAGE A— BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**B. NONOWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A— BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages)** also applies to "bodily injury" or "property damage" arising out of the use of any "nonowned auto" in the course of your business by you, or your "employees," but only for acts within the scope of their employment or while performing duties related to the conduct of your business.

**C.** With respect to this endorsement, **SECTION I— COVERAGE, COVERAGE A BODILY INJURY AND**

**PROPERTY DAMAGE,** paragraph **2. Exclusions** is amended as follows:

1. The following are deleted in their entirety:

   e. **Employer's Liability;**

   g. **Aircraft, Auto or Watercraft;**

   h. **Mobile Equipment;** and

   j. **Damage to Property.**

2. The following are added:

   This insurance does not apply to:

   a. "Bodily injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to an "employee" or co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

GLS-91s (1-10)

Home Office Copy

**Ex. D - p.0080**

to your "volunteer workers" while performing duties related to the conduct of your business.

**(2)** To your spouse, child, parent, brother or sister, or the spouse, child, parent, brother, or sister of the "employee" co-"employee," "volunteer worker," your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company) as a consequence of Paragraph **2.a.(1)** above.

**(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **2.a.(1)** or **2.a.(2)** above.

**(4)** Arising out of the providing or failure to provide professional health care services.

This exclusion applies:

**(a)** Whether the insured may be liable as an employer or in any other capacity; and

**(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**b.** "Property damage" to property:

**(1)** Owned, occupied, used or being transported by; or

**(2)** Rented or loaned to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you or any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), or members (if you are a limited liability company).

**D.** With respect to this endorsement, the following are not Insureds under **SECTION II—WHO IS AN INSURED:**

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-"employee" of such person injured in the course of employment;

**2.** Any partners or members (if you are a partnership or joint venture), members (if you are a limited liability company) or executive officer with respect to any "auto" owned by such partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), executive officer or members of their households;

**3.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

**4.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

**5.** Any person or organization with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**E.** With respect to this endorsement, the following definitions are added to **SECTION V—DEFINITIONS:**

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," co-"employees," "volunteer workers," partners or members (if you are a partnership or joint venture), members (if you are a limited liability company), or members of their households.

**3.** "Nonowned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. However, if you are a partnership or limited liability company a "nonowned auto" does not include any auto owned by any partner or member.

---

AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

Home Office Copy

Ex. D - p.0081



| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY®** | **ENDORSEMENT NO.**_____ |

Attached to and forming a part of
Policy No. BCS0029735
Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03–01–13
12:01 A.M., Standard Time
Agent No. 24712

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in construction or manufacturing any good, product or structure; or

3. The removal of asbestos from any good, product or structure; or

4. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

_____ /_____
AUTHORIZED REPRESENTATIVE          DATE

UTS-131g (3-92)

Home Office Copy

Ex. D - p.0082

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY®** | **ENDORSEMENT NO.** _____ |

Attached to and forming a part of

Policy No.   BCS0029735

Named Insured   ORION RESIDENTIAL ADVISORS

Endorsement Effective Date   03-01-13

12:01 A.M., Standard Time

Agent No.   24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RESIDENTIAL BUILDING PROJECT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to damages because of "bodily injury", "property damage", "personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way related to a "residential project".

For those items identified below with an "x" in the corresponding box, this exclusion shall not apply to "your work":

☐   1.   That consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

☐   2.   In states other than AZ, CA, CO, LA, NV, TX and WA that consists of repair, renovation or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work."

☐   3.   In the following state(s):

☐   4.   At the following specific project(s) or location(s):

☐   5.   In states other than AZ, CA, CO, LA, NV, TX and WA that involve the original development or original construction of, and which commences

during the policy period on no more than an initial twelve (12) of, any of the following types of individual living units: Single family homes, townhouses, townhomes, residential condominium or cooperative units, duplex units, any type of structural units converted into condominium units, or any other type of domicile unit intended for individual or collective residential ownership.

☐   6.   That is included within the following Class Code(s), Business Description(s) or designated operations:

☐   7.   That is not included within the "products-completed operations hazard" definition.

For purposes of this endorsement:

"Residential project" shall mean any building construction project, including structural repair, renovation or remodeling operations, involving one or more single-family homes, townhouses, townhomes, residential condominiums or cooperatives, duplexes, any type of structure converted into condominiums, or any other type of domicile intended for individual or collective residential ownership, and shall include all buildings appurtenant these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use

UTS-322s (1-09)

Page 1 of 2

Home Office Copy

Ex. D - p.0083

buildings which contain both residential units and commercial space, and shall include all buildings appurtenant these structures.

"Residential project" shall not mean apartments unless "your work" involves converting apartments into condo-miniums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____/_____

AUTHORIZED REPRESENTATIVE                          DATE

UTS-322s (1-09)                          Page 2 of 2

Home Office Copy

Ex. D - p.0084

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No. BCS0029735

Named Insured ORION RESIDENTIAL ADVISORS

Endorsement Effective Date 03-01-13

12:01 A.M., Standard Time

Agent No. 24712

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF CANCELLATION—CERTIFICATE HOLDERS

The following Conditions are added:

1.  If this policy is cancelled, we will endeavor to give thirty (30) or ___30___ days written notice of such cancellation to the person(s) or organization(s) as on file with the Agent shown on this policy's Common Policy Declarations for which the designated Agent has issued a Certificate of Insurance pertaining to this policy. Such notice may be provided before or after the effective date of cancellation. The notice will state the effective date of cancellation. However, such notice of cancellation is solely for the purpose of informing the Certificate Holder of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.

2.  Failure to give notice in accordance with the terms of this endorsement does not:

    a.  Alter the effective date of policy cancellation;

    b.  Render such cancellation ineffective;

    c.  Grant, alter, or extend any rights or obligations under this policy; or

    d.  Extend the insurance beyond the effective date of cancellation.

_____     /     _____
                AUTHORIZED REPRESENTATIVE                              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

UTS-409g (1-11)                          Page 1 of 1

Home Office Copy

Ex. D - p.0085

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| BCS0029735 | 03-01-13 | ORION RESIDENTIAL ADVISORS LLC; | 24712 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BROAD NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Orion Residential Advisors LLC, and all affiliated, subsidiary, associates or allied companies, including but not limited to corporations, limited liability companies, firms entities, partnerships, organizations or joint ventures as now exist or may hereafter be constituted or acquired, or for which the named insured has the responsibility of placing insurance, and for which similar coverage is not otherwise more specifically provided.

All other terms and conditions remain unchanged.

_____/_____
AUTHORIZED REPRESENTATIVE             DATE

UTS-3g-01  (3-92)



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 001

| | | |
|---|---|---|
| Policy No. | BCS0029735 | Effective Date: 03-01-13 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by ☒ below.**

☐ Commercial Property
☐ Commercial General Liability
☐ Commercial Crime
☐ Commercial Inland Marine
☐
☐

### CHANGE DESCRIPTION

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT THE
FOLLOWING FORM HAS BEEN DELETED:

UTS-74G        08-95    PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

### PREMIUM CHANGE

| Additional $ NO CHARGE | Return $ NO CHARGE |
|---|---|

_____
AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. D - p.0087



SCOTTSDALE INSURANCE COMPANY®

# CHANGE ENDORSEMENT NO. 002

| | |
|---|---|
| Policy No.   BCS0029735 | Effective Date: 03-01-13 |
| | 12:01 A.M., Standard Time |
| Named Insured   ORION RESIDENTIAL ADVISORS | Agent No.   24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [ ]
- [ ]

**CHANGE DESCRIPTION**

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT THE SCHEDULE OF NAMED INSUREDS IS AMENDED TO ADD THE FOLLOWING:

CITI ON CAMELBACK CONDOMINIUM ASSOCIATION, INC.

**PREMIUM CHANGE**

| Additional $ NO CHARGE | Return $ NO CHARGE |
|---|---|

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy



**SCOTTSDALE INSURANCE COMPANY**®

# CHANGE ENDORSEMENT NO. 003

Policy No.    BCS0029735

Effective Date:  03-01-13
12:01 A.M., Standard Time

Named Insured   ORION RESIDENTIAL ADVISORS

Agent No.   24712

---

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by [x] below.**

☐ Commercial Property
☐ Commercial General Liability
☐ Commercial Crime
☐ Commercial Inland Marine
☐
☐

---

### CHANGE DESCRIPTION

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT THE
SCHEDULE OF LOCATIONS IS AMENDED, PER ATTACHED.

---

### PREMIUM CHANGE

Additional $ NO CHARGE                    Return $ NO CHARGE

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| *** 018 | *** 001 | THE FOLLOWING PREMISES ARE ADDED: 3843 PENBROOK STREET ODESSA, TX 79762 | CONTINGENT |
| 019 | 001 | 2613 N MIDLAND DRIVE MIDLAND, TX 79707 | CONTINGENT |
| 020 | 001 | 3814 N HOLIDAY HILL ROAD MIDLAND, TX 79707 | CONTINGENT |
| 021 | 001 | 3321 NEELY STREET MIDLAND, TX 79707 | CONTINGENT |
| 022 | 001 | 2300 NORTH A STREET MIDLAND, TX 79705 | CONTINGENT |
| 023 | 001 | 3329 W WADLEY AVENUE MIDLAND, TX 79707 | CONTINGENT |
| 024 | 001 | 509 DELMAR STREET MIDLAND, TX 79703 | CONTINGENT |
| 025 | 001 | 3500 BOYD AVENUE MIDLAND, TX 79707 | CONTINGENT |
| 026 | 001 | 3623 MCCANN ROAD LONGVIEW, TX 75605 | CONTINGENT |
| 027 | 001 | 4400 ANDREWS HIGHWAY MIDLAND, TX 79703 | CONTINGENT |
| 028 | 001 | 4405 N GARFIELD STREET MIDLAND, TX 79705 | CONTINGENT |
| 029 | 001 | 1902 N MIDLAND DRIVE MIDLAND, TX 79702 | CONTINGENT |
| 030 | 001 | 4400 N HOLIDAY HILL ROAD MIDLAND, TX 79707 | CONTINGENT |

UTS-3L (8-86)

Home Office Copy

Ex. D - p.0090

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0029735

Effective Date: 03-01-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 031 | 001 | 1907 TARLETON STREET<br>MIDLAND, TX 79707 | CONTINGENT |
| 032 | 001 | 4534 SINCLAIR AVENUE<br>MIDLAND, TX 79707 | CONTINGENT |
| 033 | 001 | 2735 E EIGHTH STREET<br>ODESSA, TX 79761 | CONTINGENT |
| 034 | 001 | 2201 ROCKY LANE ROAD<br>ODESSA, TX 79762 | CONTINGENT |
| 035 | 001 | 9100 ANDREWS HIGHWAY<br>ODESSA, TX 79765 | CONTINGENT |
| 036 | 001 | 2601 N A STREET<br>MIDLAND, TX 79705 | CONTINGENT |
| 037 | 001 | 2950 PLEASANT AVENUE<br>ODESSA, TX 79764 | CONTINGENT |
| 038 | 001 | 4330 N GRANDVIEW<br>ODESSA, TX 79762 | CONTINGENT |
| ***<br>013 | ***<br>001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED:<br>MIDLAND PORTFOLIO<br>VARIOUS<br>MIDLAND, TX 79707 | CONTINGENT |

UTS-3L (8-86)

Home Office Copy

Ex. D - p.0091



## CHANGE ENDORSEMENT NO. 004

| Policy No. | BCS0029735 | | Effective Date: 10-07-13 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. | 24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by ☒ below.**

| | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $ 543.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

### CHANGE DESCRIPTION

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $543.00, IT IS AGREED THAT THE SCHEDULE OF LOCATIONS AND THE EXTENSION OF SUPPLEMENTAL DECLARATIONS ARE AMENDED, PER ATTACHED.

### PREMIUM CHANGE

| Additional $ | 543.00 | Return $ | |
|---|---|---|---|
| | | | AUTHORIZED AGENT |

**UTS-244L (6-92)**

Home Office Copy

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0029735

Named Insured ORION RESIDENTIAL ADVISORS

Effective Date: 10-07-13
12:01 A.M., Standard Time

Agent No. 24712

| Prem.<br>No. | Bldg.<br>No. | Designated Premises<br>(Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| ***<br>039 | ***<br>001 | THE FOLLOWING PREMISES ARE ADDED:<br>FAIRWAYS AT WILSON CREEK<br>3191 MEDICAL CENTER DR<br>MCKINNEY, TX 75069 | CONTINGENT |
| 040 | 001 | PARK WEST APTS<br>7251 CROWLEY RD<br>FORT WORTH, TX 76134 | CONTINGENT |
| 041 | 001 | PROVIDENCE IN THE PARK<br>1601 W ARBROOK BLVD<br>ARLINGTON, TX 76015 | CONTINGENT |
| 042 | 001 | TOWNSHIP ON HULEN BEND<br>6401 HULEN BEND BLVD<br>FORT WORTH, TX 76132 | CONTINGENT |

UTS-3L (8-86)

Home Office Copy

Ex. D - p.0093



## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0029735

Effective Date: 10-07-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED. | | |
|---|---|---|
| **THE FOLLOWING CLASS CODE INFORMATION IS CHANGED:** | | |
| Code No. 47052 | Premium Basis GROSS SALES | Premises/Operations |
| Premises 003/001 | Exposure $1,780,867 | Rate 2.783 / ADJ. ANNUAL Premium 543.00 |
| Classification: REAL ESTATE PROPERTY MANAGED (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations |
| | | Rate Included / ADJ. ANNUAL Premium Included |
| **THE FOLLOWING CLASS CODE INFORMATION IS** | | |
| Code No. | Premium Basis | Premises/Operations |
| Premises | Exposure | Rate / ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations |
| | | Rate / ADJ. ANNUAL Premium |
| **THE FOLLOWING CLASS CODE INFORMATION IS** | | |
| Code No. | Premium Basis | Premises/Operations |
| Premises | Exposure | Rate / ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations |
| | | Rate / ADJ. ANNUAL Premium |
| **THE FOLLOWING CLASS CODE INFORMATION IS** | | |
| Code No. | Premium Basis | Premises/Operations |
| Premises | Exposure | Rate / ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations |
| | | Rate / ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 005

| | | |
|---|---|---|
| Policy No. | BCS0029735 | Effective Date: 10-23-13 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No. 24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by x below.**

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [ ]
- [ ]

### CHANGE DESCRIPTION

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT

THE NAMED INSURED HAS BEEN AMENDED TO INCLUDE:

BRE APARTMENT HOLDINGS LLC

### PREMIUM CHANGE

| Additional $ NO CHARGE | Return $ NO CHARGE |
|---|---|

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

Ex. D - p.0095



# SCOTTSDALE INSURANCE COMPANY®

## CHANGE ENDORSEMENT NO. 006

| Policy No. | BCS0029735 | Effective Date: 11-08-13 |
| | | 12:01 A.M., Standard Time |
| Named Insured | ORION RESIDENTIAL ADVISORS | Agent No.  24712 |

**COVERAGE PART INFORMATION – Coverage parts affected by this change as indicated by x below.**

| | | |
|---|---|---|
| ☐ | Commercial Property | |
| ☒ | Commercial General Liability | $     -2,463.00 |
| ☐ | Commercial Crime | |
| ☐ | Commercial Inland Marine | |
| ☐ | | |
| ☐ | | |

**CHANGE DESCRIPTION**

IN CONSIDERATION OF A RETURN PREMIUM OF $2,463.00, IT IS AGREED THAT
THE SCHEDULE OF LOCATIONS AND THE EXTENSION OF SUPPLEMENTAL
DECLARATIONS ARE AMENDED, PER ATTACHED.

IT IS FURTHER AGREED THAT

THE NAMED INSURED HAS BEEN AMENDED TO EXCLUDE:

ORION-POSADA VALLARTA ASSOCIATE, LLC
ORION AT HERMOSA POINTE

**PREMIUM CHANGE**

| Additional $ | | Return $     -2,463.00 |
|---|---|---|

AUTHORIZED AGENT

**UTS-244L (6-92)**

Home Office Copy

# SCHEDULE OF LOCATION CHANGES

Policy No. BCS0029735

Effective Date: 11-08-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| ***<br>001 | ***<br>001 | THE FOLLOWING PREMISES ADDRESSES ARE DELETED:<br>ORION AT HERMOSA POINTE<br>10002 NORTH 7TH ST<br>PHOENIX, AZ 85020 | 336 UNITS |

UTS-3L (8-86)

Home Office Copy

Ex. D - p.0097



**SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF GENERAL LIABILITY CHANGES

Policy No. BCS0029735

Effective Date: 11-08-13
12:01 A.M., Standard Time

Named Insured ORION RESIDENTIAL ADVISORS

Agent No. 24712

---

**CLASS CODE INFORMATION AFFECTED BY THIS CHANGE IS ADDED, DELETED OR CHANGED AS INDICATED.**

**THE FOLLOWING CLASS CODE INFORMATION IS DELETED:**

| Code No. 47052 | Premium Basis GROSS SALES | Premises/Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure $89,325 | Rate 2.821 | ADJ. ANNUAL Premium -78.00 |
| Classification: REAL ESTATE PROPERTY MANAGED (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS DELETED:**

| Code No. 60010 | Premium Basis UNITS | Premises/Operations | |
|---|---|---|---|
| Premises 001/001 | Exposure 336 | Rate 23.642 | ADJ. ANNUAL Premium -2,463.00 |
| Classification: APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS ADDED:**

| Code No. 47052 | Premium Basis GROSS SALES | Premises/Operations | |
|---|---|---|---|
| Premises 008/001 | Exposure $89,325 | Rate 2.821 | ADJ. ANNUAL Premium 78.00 |
| Classification: REAL ESTATE PROPERTY MANAGED (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | Products/Compl Operations | |
| | | Rate Included | ADJ. ANNUAL Premium Included |

**THE FOLLOWING CLASS CODE INFORMATION IS**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Premises | Exposure | Rate | ADJ. ANNUAL Premium |
| Classification: | | Products/Compl Operations | |
| | | Rate | ADJ. ANNUAL Premium |

GLS-104L (6-92)

Home Office Copy

**Ex. D - p.0098**